Griffin et al. v. Societe Anonyme la Floridienne et al.—Syllabus.

B. H. GRIFFIN AND GRAVES J. SMITH, AS EXECUTORS OF W. H. SMITH, DECEASED; JENNIE SMITH AND E. B. BORDEN, JR., APPELLANTS, v. SOCIETE ANONYME LA FLORIDIENNE, J. BUTTGENBACH & COMPANY, A CORPORATION UNDER THE LAWS OF THE KINGDOM OF BELGIUM, AND CHARLES P. SAVARY, APPELLEES.

1. Equity will reform a written instrument when by mistake or fraud it does not contain the true agreement of the parties; but it will only do so when it is satisfactorily made to appear that a mistake has been made or a fraud committed for the writing should be deemed to be the sole expositor of the intent of the parties until the contrary has been established beyond reasonable controversy; and in such a case the burden is upon the complainants to establish the facts relied on for reformation by clear and satisfactory evidence.

2. Agency cannot be proved by the mere declarations of a supposed agent.

3. The evidence in this case examined, and found insufficient to justify this court in reversing the decree of the circuit court denying the prayer of a bill for the reformation of a written contract.

4. Where upon the final hearing, it clearly appears from the evidence that the complainant has a case which entitles him to relief, but which by reason of some defect or omission in the allegations of the bill, is not brought fairly within the issue, he will generally be permitted to amend the bill, and adapt its allegations to the case as proven; but when the proposed amendment would change the issue, or introduce new issues, or materially vary the grounds of relief, generally an amendment of the bill is not permissible.

51—SC

5.    Applications to amend a bill should be made promptly after the necessity for the amendment has been discovered, and the allowance is within the reasonable discretion of the court.

This case was decided by Division B.

Appealed from the Circuit for Citrus County.

### STATEMENT.

On the 11th day of July, 1905, William H. Smith and Jennie Smith, his wife, and E. B. Borden, Jr., all residents of Goldsboro, North Carolina, filed their bill of complaint in the circuit court of Citrus county against Societe Anonyme la Floridienne, J. Buttgenbach & Company (hereinafter referred to as the company), a corporation under the laws of Belgium, but doing business and maintaining offices in Citrus county, Florida, and Charles P. Savary, alleging: "First: That on the first day of August, A. D. 1902, and prior thereto, and continuously from said date to the time of the commencement of this suit, the complainants, W. H. Smith and E. B. Borden, were and are the owners of the following described real estate in Citrus county, Florida, to wit: The west half of the southwest quarter of section twenty-two, township twenty, range twenty, east. That complainants show that the defendants, Societe Anonyme la Floridienne, J. Buttgenbach & Company (hereinafter for brevity called 'The defendant company') is engaged in the mining and preparing for market and shipping of phosphate rock, and for such purposes buys options and leases of lands containing deposits of such rock; that the defendant Savary

was at the time of the execution of the options and leases hereinafter mentioned a practical prospector for deposits of phosphate rock.

Second: Complainants further show that the lands above mentioned are valuable only for the deposits of phosphate therein and the timber growing thereon, and said defendant company desiring to lease said property for the purpose of mining the rock therein; and also being desirous of procuring the right and privilege of prospecting said land, in order that it might satisfy itself as to the location and extent of the phosphate deposits on said land; and also as to the quality and quantity thereof; procured said defendant Savary to enter into a certain option contract, which said option contract is hereto attached, marked exhibit 'A,' and made a part of this bill. That in compliance with the request of the said Savary, these complainants entered into said option for the purposes as therein stated of permitting the said defendant Savary or his heirs or assigns, to go upon said land and prospect the same; and agreeing, among other things, to enter into a contract of lease designated in said option contract, should said Savary so desire, within sixty days from the date of said option contract; and it was further agreed in said option contract that the term of the said lease should be the period of ten years.

Third: Complainants show that under the terms and conditions of said lease, the defendant company entered upon said land and prospected the same for the purpose of ascertaining the quality and quantity and extent of the phosphate deposits therein; and after so prospecting the said land, and having satisfied itself of the presence of phosphate rock of the quantity and quality mentioned in said proposed lease, it caused a contract of lease, in con-

formity with the contract mentioned and set out in said option contract to be prepared and forwarded to the complainants Smith and Borden, with the request that they, the complainants, execute the same and bring said lease, properly executed, to Inverness, Citrus county, Florida, and there receive the first payment of five thousand dollars specified therein, or, to send the said lease contract to some bank in Ocala, Marion county, Florida, and draw upon the said defendant company for said sum of five thousand dollars.

Fourth:  Complainants further show that the defendant company, on the 18th day of October, 1902, procured the complainants' consent, in writing, that said lease might be assigned by said Savary to J. Buttgenbach & Company, a copartnership composed of J. Buttgenbach, Jules Rolin, E. Van de Rest and E. Todros, a copy of which said written consent is hereto attached, marked Exhibit 'B,' and made a part hereof.  And afterwards, to wit, on the 22nd day of October, 1902, the defendant Charles P. Savary, and his wife, Maggie Savary, executed an assignment of said lease contract to the said J. Buttgenbach & Company, said assignment being upon the condition, however, among other things, that said Buttgenbach & Company should pay to the said Savary the sum of fifteen cents per ton of twenty-two hundred and forty pounds of phosphate rock that it should mine, or is required to be mined under said lease, which said assignment is hereto attached, marked Exhibit 'C,' and made a part hereof.

Fifth:  And afterwards, to wit, on the 17th day of November, 1902, it having been made to appear to the complainants, and to said Savary, that said assignment to said J. Buttgenbach & Company was a mistake, and

that it was proposed and intended to assign said lease to said defendant company herein, the complainants and defendant, Savary, consented, in writing, that said J. Buttgenbach & Company might transfer said lease contract to the defendant company herein; which said written consent is hereto attached, marked Exhibit 'D,' and made a part hereof. And your orators charge on information and belief that said J. Buttgenbach & Company did transfer and assign all of their right, title and interest in and to said lease to the defendant company herein.

Sixth: Complainants further show that after said lease had been duly assigned and acknowledged by W. H. Smith and Jennie Smith, his wife, and E. B. Borden, Jr., all of whom lived at that time in Wayne county, North Carolina, W. H. Smith obtained from complainant Borden a power of attorney authorizing the said Smith to receipt for the proportionate part of the said five thousand dollars belonging to said Borden, as he had been requested by the defendant company to do, and carried said power of attorney, lease and assignment thereof to J. Buttgenbach & Company, all duly executed, to Inverness, Florida; and there delivered the said lease and assignment thereof to one A. S. Anderson, he receiving from the said Anderson the sum of five thousand dollars, the first payment agreed to be made by the terms of the said contract.

Seventh: It is further shown that in said contract of lease that defendant company obligated itself to pay the complainants a minimum royalty of five thousand dollars per year for the term of ten years, said payments to be made quarterly. That after the delivery of said lease, and the payment of said sum of five thousand dollars, the said A. S. Anderson, then the agent of the defendant company,

suggested to the complainant Smith that the defendant company would erect a plant on said land mentioned in said lease of sufficient capacity to mine much more rock than the minimum required to be mined each and every year; and that said defendant company might mine the amount of rock required to be mined in less than the space of ten years, and that if it did so, it did not desire, after having paid the amount specified in said lease contract, for all the rock contained in said land to have to pay the minimum rental for the balance of the term of ten years; that the said defendant company did not care to have to pay for the same twice, and did not desire to have said annual minimum rental following it after it had been paid; and the said complainant Smith, desirous of only receiving the minimum, agreed to be paid once, and only to be paid for the excess royalty over and above the said minimum rental, at the suggestion of the counsel for the complainant, Judge Richard McConathy, agreed that there might be inserted a clause in said lease "or until the exhaustion of the rock required to be mined under this lease," and said clause was after the execution and delivery of the said lease, without any consideration, and without the knowledge or consent of E. B. Borden, Jr., inserted in said lease. Your orators show that said clause was inserted in the said lease without any consideration, and without the consent of E. B. Borden; that at the time said clause was so inserted in said lease, complainant Smith had no authority to consent thereto for and on behalf of the said Borden, but was without counsel and wholly ignorant of the meaning of leases, and relied upon the representations of the said A. S. Anderson that said clause was to be inserted therein for the sole purpose of protecting said defendant from the necessity

of paying said sum of fifty thousand dollars, or some part thereof twice.    A copy of which said lease with said clause inserted therein is hereto attached marked Exhibit 'E,' and made a part hereof.

Eighth: Your orators further show that the defendant company was at the time of the insertion of said clause in said contract represented by Richard McConathy, esquire, a practicing lawyer, and thoroughly familiar and conversant with mining contracts; that the said W. H. Smith had no time to consider the probable effect of the insertioin of said clause upon the construction of said contract, and had perfect confidence in the knowledge and integrity of the defendants' representatives, and believed that the insertion of said clause would have no other effect than that of protecting the defendant company against the payment of the minimum rental upon the contingency suggested—that it might mine a greater quantity of phosphate rock per annum than was required by the terms of the said contract, and having paid the minimum rental of fifty thousand dollars, and having exhausted the rock on said land, might be compelled to continue paying the minimum rental until the expiration of the ten years mentioned in said contract. And complainants allege on information and belief that the representatives of the defendant company above mentioned believed that the insertion of said clause would have no other effect than that above specified.

Ninth: Your orators show that the five thousand dollars above mentioned as having been paid to complainants Smith on the delivery of the lease contract, and before the insertion of the clause above mentioned, was paid as and for the minimum rental for the year beginning October 18th, 1902, and ending October 18th, 1903.

That defendant company afterwards paid the complainants the sum of $1250.00 dollars, the quarterly minimum rental for the quarter beginning October 18th, 1903, and ending January 18th, 1904, but that said defendant company, pretending and claiming that said clause above referred to in said contract exempts them from further payment of the minimum rental, have failed and refused and still fail and refuse to pay the same.

Tenth: Your orators show that the complainants Smith & Borden have commenced their two certain suits in the circuit court of Citrus county against the defendant company for the purpose of enforcing the payment of the quarterly minimum rentals due respectively on the 18th of April and the 18th of July, 1904; and defendant company as a defense to said suits, have set up the clause above referred to in said lease contract, contending and insisting that by reason of the presence of said clause in said lease contract, it, the defendant company, is not bound to pay the minimum rental after the exhaustion of the rock of the quality required to be mined in said lease contract, and alleges that said rock is exhausted. Your orators show that this use of the clause inserted in said contract is contrary to the understanding of the complainants and defendant company at the time of its execution, and is a surprise and fraud upon these complainants, and contrary to the intent and purposes of the complainant W. H. Smith and the agent of the defendant company, in inserting the same in said lease, and having been inserted wholly without consideration, is void.

Eleventh: Your orators further allege on information and belief that the phosphate rock of the quality and quantity prescribed in the said lease contract has not been exhausted in said land, but that phosphate rock of

high grade and in large quantities is now in the said land, and that defendant company has failed to mine said rock by its own negligence, and the use of improper methods in the execution of said mining process, and that the rock that has been mined was not properly cleaned and washed, and the grade thereof greatly lowered by such failure to properly wash and clean said rock.

Twelfth: Your orators further show that defendants have, by the insertion of said clause, and the wrongful contention of the defendant company thereunder, put the complainants to the necessity of meeting the untrue allegations of the defendant company that said rock is exhausted, in which effort the complainants have been put to great expense, and will be put to greater expense of time and money in order to refute such untrue allegations, unless given relief by this honorable court.

Wherefore, your orators pray:

1. That the state's most gracious writ of subpoena may issue directed to the defendants, Societe Anonyme la Floridienne J. Buttgenbach & Company, a corporation, and Charles P. Savary, commanding them and each of them, on a day certain to be therein named, and under a penalty, to appear and answer this your orators' bill of complaint.

2. That upon the said defendants appearing and answering as above referred to, and the issues being made up, and the testimony taken, or the cause being otherwise at issue, that this court reform the said lease of contract by striking therefrom the clause mentioned in this bill, to wit: 'or, until the exhaustion of the rock required to be mined under this lease,' where the same appears under the title 'term,' in said lease contract.

3. That your honor enjoin and restrain all the parties

to the said several suits at law above mentioned, to wit: those certain suits wherein W. H. Smith and E. B. Borden, Jr., are plaintiffs, and Societe Anonyme la Floridienne J. Buttgenbach & Company, are defendants, now pending in the circuit court of Citrus county, Florida, from any further proceedings in said causes until this cause may be determined, and for such other and further relief, as to your honor may seem just, and is in equity meet."

An affidavit was attached to this bill signed by W. H. Smith, Jennie Smith and E. B. Borden, Jr., that the allegations of the above bill are true with the exception of those things alleged on information and belief, which matters they believe to be true. Exhibit "A" attached to the bill is a copy of the option contract entered into on the 1st of August, 1902, between W. H. Smith, Jennie Smith, his wife, and E. B. Borden, Jr., of the first part, and Charles P. Savary of the second part. This option contract contains, among others, the following terms: "That the said parties of the first part, for and in consideration of the sum of ten dollars to them cash in hand paid, the receipt whereof is hereby acknowledged, have given, granted and sold, and by these presents do give, grant and sell unto the said party of the second part, his heirs and assigns, the right and option to enter into the contract hereinafter more fully set out between the parties hereto, their heirs or assigns, for the period of sixty (60) days, from the date of delivery hereof, that is to say: If the said second party, his heirs or assigns, shall so elect after going upon and prospecting the lands hereinafter described within sixty days from said date, the first parties agree, for themselves, their heirs, executors and administrators, to execute and deliver said *option* to the said

second party, his heirs or assigns. Said lease shall be in the following form: 'This indenture made and entered into this the first day of September, A. D. 1902, by and between W. H. Smith and Jennie Smith, his wife, and E. B. Borden, Jr., of the county of Wayne, state of North Carolina, parties of the first part, and C. P. Savary, of the county of Citrus, state of Florida, party of the second part:

Witnesseth: That for and in consideration of the covenants and agreements hereinafter contained, and the agreement to pay rent or royalties hereinafter provided for, the said parties of the first part do hereby grant and lease unto the said party of the second part, his heirs and assigns, that certain tract or parcel of land situated in said Citrus county, Florida, described as follows, to wit: The west half of the southwest quarter of section twenty-two, township twenty, south, range twenty east, containing eighty acres more or less, for the purpose of digging, mining and preparing for shipment and shipping phosphate rock, hereinafter described as to quality and quantity, contained in said lands, and the carrying on of the business of mining said phosphate rock.

## TERM.

The term of this lease is for a period of ten years from the date hereof; but at the expiration of said term of years, the said party of the second part, his heirs or assigns, shall have the preference over all others to release said lands if the first parties or their assigns wish to lease the same, on the same *bona fide* terms as are offered by any other responsible person or corporation.''

The contract then provides that the second party (Sa-

ary) agrees to pay the first parties as royalty or rent for the exclusive privileges of mining said land the sum of eighty-five cents per ton of 2240 pounds for each ton of rock he may mine on said land during the term of this lease of the quality thereafter described, the minimum to be not less than 5882 tons for each year of the lease period, or to pay to said parties of the first part, their heirs or assigns, the sum of $5,000 per year in installments as hereinafter set forth, whether mining is carried on or not, and in the event that less than the minimum amount was mined during any one year, the second party may make up the deficit within the next succeeding year. An advance of $5,000 is to be paid on the delivery of the lease, the second party to have the right to reimburse himself before any other rent or royalty shall become due. It is also provided in this proposed contract that "it is not assignable by the second party without the consent in writing of the first parties." There are many other provisions in this option and proposed contract, which we do not think it is necessary to set out. It was executed on the 1st of September, 1902, and filed for record on the 14th of October, 1902, in the clerk's office of Citrus county, Florida.

Exhibits "B," and "C" to the bill are as follows:

### "Exhibit 'B.'

We, the first parties in the foregoing lease contract, hereby give our written consent that the said lease contract may be assigned by the said Charles P. Savary, to Messrs. J. Buttgenbach & Co., a partnership composed of J. Buttgenbach, Jules Rolin, E. Van de Rest, and E. Todros.

Witness our hands and seals this the 18th day of October, 1902.

| Witnesses: | W. H. Smith | (Seal) |
| J. A. Washington, | Jennie Smith | (Seal) |
| J. W. Gulick, | E. B. Borden, Jr. | (Seal) |

Filed October 21st, 1902, and recorded October 28th, 1902.  Walter F. Warnock,
Clerk of the Circuit Court.

## "Exhibit 'C.'

Know all men by these presents: That Charles P. Savary and his wife, Maggie Savary, of Citrus county, Florida, parties of the first part, for and in consideration of the sum of one dollar and other good and valuable considerations to them in hand paid by the J. Buttgenbach & Co., of Holder, Florida, party of the second part, the receipt of which is hereby acknowledged, do by these presents grant, convey, assign, transfer and set over unto the party of the second part, its heirs, successors and assigns, that certain instrument of mining lease or contract, bearing the date of October 18th, 1902, executed by W. H. Smith and Jennie Smith and E. B. Borden, Jr., to Charles P. Savary, covering that certain parcel of land in Citrus county, Florida, described as being the west half of the southwest quarter of section twenty-two, township twenty south, range twenty east, and which lease was filed on record in the office of the clerk of the circuit court of Citrus county, Florida, October 22nd, 1902, together with all and singular the estate, rights, title, interest and privileges of the parties of the first part and each of them in and to and under said lease or mining contract.

And said party of the second part, for themselves, their

heirs, successors and assigns, covenant, promise and agree to and with the parties of the first part, their heirs and assigns, to do and perform each and all covenants, conditions and agreements to be performed by said Charles P. Savary under the terms of said lease, and to save and keep him harmless from all conditions; to be by him paid or performed under said lease. And the party of the second part promises and agrees to and with said Charles P. Savary, his heirs, executors, administrators and assignee, to pay to him the sum of fifteen cents per ton of 2240 pounds, on all phosphate that it shall mine or is required to mine under said lease, said payment to be ascertained and made as is required by said lease for payment of the royalty named in said lease.

In the event that the said party of the second part shall fail to carry out or perform the terms and conditions of said lease or of this assignment thereof, said lease shall revert to said Charles P. Savary, his heirs and assigns, but thirty days' notice of his intention to avail himself of this clause, specifying wherein such failure consists, shall be given to him by said second party, during which period said second party may perform as set forth in said notice.

Witness the hands and seals of the parties of the first part, this 22nd day of October, 1902.

Charles P. Savary,    (Seal)

Maggie Savary.    (Seal)

Signed, sealed and delivered in presence of:

Richard McConathy,

Geo. W. De Muro."

Exhibit "D" to the bill is a consent in writing dated the 17th of November, 1905, executed by the complainants that the lease assigned by Savary and wife to J.

Buttgenbach & Co. may be assigned to the defendant company. Exhibit "E" to the bill is a copy of the lease contract executed by complainants to Charles P. Savary, dated the 18th of October, 1902, into which it is claimed in the bill the words *"or until the exhaustion of the rock required to be mined under this lease"* were interpolated, after its execution and delivery, so that the term of the lease as expressed in said contract is as follows: "The term of said lease is for a period of ten years from the date hereof or until the exhaustion of the rock required to be mined under this lease."

In other respects the lease contract is substantially similar to the one provided for in the option contract, described as Exhibit "A," and was executed and acknowledged in North Carolina, before the clerk of the superior court of Wayne county.

On the 14th of September, 1905, the defendant company filed a demurrer to this bill. This demurrer was overruled. On the 14th of December, 1905, the defendant company filed an answer to the bill. In this answer it alleged:

1st. That it was not advised whether Charles P. Savary had, at the time of the execution of the option lease prospected the lands for phosphate rock, nor whether he was a practical prospector, and demanded proof.

2nd. That it is not true that the lands are valuable for the phosphate therein or the timber growing thereon; that after investigation it had found that they are not valuable for the deposit of phosphate therein, and that the phosphate there may be in said lands, is of but little value.

3rd. It denies that it procured Savary to enter into

the option lease marked Exhibit "A," to the bill but
alleges that after Savary had procured said option, that
he procured the defendant company to prospect said land
for phosphate, with a view of taking a lease, in the event
it was willing to do so and pay Savary an additional
sum to that named as royalty, but denies that it entered
upon said land, or prospected the same, or agreed to lease
the said land under the terms named in said option con-
tract for a lease. It alleges that after its employees had
done some prospecting, it was induced to believe from the
report of the prospector that there was phosphate rock
of the quality and kind mentioned in said option con-
tract to justify it in mining said land, but denies that
it caused a contract of lease to be prepared or forwarded
to complainants to be executed and returned and deliv-
ered upon the payment of the cash payment therein men-
tioned.

4th. It avers that it consented to take an assignment
from Savary of the lease executed to him by complain-
ants on the 18th of October, 1902, for the purpose of min-
ing phosphate rock, according to the terms and conditions
of said lease, but did not consent to take an assignment
of a lease according to the terms of said option contract;
denies that it procured consent to the assignment of said
lease to J. Buttgenbach & Co., but alleges said contract
was procured by Savary, in order that he might assign it
to the defendant company; denies that said option was
ever assigned to it; avers that on the 22nd day of October,
the date of the delivery of said lease, defendant Savary
and his wife assigned the lease to J. Buttgenbach & Co.
and the latter subsequently assigned it to the defendant
company.

5th. After other denials and averments, the answer

denies that said lease and assignment, or either of them was delivered to A. S. Anderson; or that said Anderson paid complainant Smith the five thousand dollars mentioned in the bill.

6th.   It denies that it agreed to pay complainants a royalty of five thousand dollars per year, or any other sum, for five years, and denies that after the delivery of said lease and payment of the sum of five thousand dollars, or either, A. S. Anderson suggested to the complainant Smith, that the defendant company would erect a plant on said land mentioned in said lease of sufficient capacity to mine much more rock than the minimum required, each and every year, or  that it might mine the amount of rock required in less than ten years, and that if it did so, it did not desire to pay the minimum rental for the balance of the ten year term, or pay for the same thing twice, and complainant Smith being desirous only of receiving the minimum, agreed to be paid once, and only to be paid for the excess royalty over and above the minimum rental, at the suggestion of counsel for complainant, Judge Richard McConathy, agreed that there might be inserted the clause in said lease "or until the exhaustion of the rock required to be mined under this lease," or that said clause was inserted after the execution and delivery of said lease, without consideration and without the consent of E. B. Borden Jr.   It avers that nothing was inserted in said lease after it had been executed by complainants, at the suggestion of either said Anderson or said McConathy, or of the defendant company by any representative.   It avers on information and belief that the clause "or until the exhaustion of the rock required to be mined under this lease," was in said lease

52—SC

as it was originally prepared in Florida and sent to complainants in North Carolina for execution. It denies that Judge McConathy made any representations whatever to complainant Smith as to the insertion of said clause in said lease, as there was no occasion for him to do so. It admits that it paid complainants $1250.00, the quarterly rental for the quarter ending October 16, 1903, and ending January 18, 1904, but avers said payment was made before this defendant had discovered by actual mining that the land did not contain rock which it was required to mine under the lease, and that the same was paid under a mistake of fact. There are other allegations and denials in the answer, but we do not think it necessary to mention them, as the foregoing substantially sets forth the matters essential to be examined.

On the 22nd of January, B. H. Griffin and Graves J. Smith, as executors of W. H. Smith, who had died after the suit was instituted, were substituted as parties complainant.

A general replication was filed to this answer.

It does not appear from the record that Savary ever answered the bill, or that any decree *pro confesso* was ever taken as to him. He seems to have been treated as a nominal party.

This case was referred to a master to take and report the testimony, and was finally heard upon the pleadings and evidence, and on the 31st of December, 1903, he made findings of fact adverse to the contentions of the complainants, and also made a final decree based on his findings, dismissing the bill. From this decree an appeal was taken to this court. Other facts will be given in the opinion.

Griffin et al. v. Societe Anonyme la Floridienne et al.—Opinion.

*E. W. Davis* and *W. C. Monroe,* for Appellant;

*J. M. Young* and *R. M. McConathy,* for Appellees.

HOCKER, J. *(after stating the facts)* : The purpose of the bill is to secure the reformation of the lease contract executed by complainants to Charles P. Savary on the 18th of October, 1902, by striking out the words *"or until the exhaustion of the rock required to be mined under this lease."* It is alleged in the bill, in substance, that these words were interpolated in the lease after its execution and delivery to the defendants, that they materially changed the nature of the contract, were inserted therein without any consideration, without the knowledge of Mr. Borden, and are, therefore, not binding upon the complainants. The answer denies that these words were inserted in the contract after its execution and delivery, and avers that they were in the lease when it was originally prepared and sent to North Carolina to be executed by the complainants, and that the defendant company would not have accepted an assignment of the lease from Savary if it had not contained these qualifying words. Without further examination we shall assume that the words which the bill seeks to eliminate from the lease are material. The law with reference to the reformation of written instruments, and the character of the evidence required in such cases, have been passed on in a number of cases by this court. In Jacobs v. Parodi, 50 Fla. 541, 39 South. Rep. 833, we followed and re-affirmed the rule laid down in Franklin v. Jones, 22 Fla. 526, where it is held that "while equity would reform a written instrument when by mistake it did not contain the true agreement of the parties, yet it would only do so when the

mistake was plain and the proof was full and satisfactory; that the writing should be deemed to be the sole expositor of the intent of the parties until the contrary was established beyond reasonable controversy; that such relief would not be granted where the evidence was loose, contradictory or equivocal." Where the ground for reformation is that fraud was committed the same rule is applied. Hargis v. Campbell, 14 Fla. 27. An examination of a number of authorities satisfies us that this rule obtains generally; some courts holding that the facts must be proved beyond a reasonable doubt. The burden of proof is upon the complainants to establish the facts which are relied on for reformation by clear and satisfactory evidence. Harrison v. Hartford Fire Ins. Co., 30 Fed. Rep. 862. In Whitney v. Smith, 33 Minn. 124, 22 N. W. Rep. 181, it was held that where a deed was executed in the performance of an executory contract to convey the land, and where the deed so executed differed from the contract, this fact alone does not make out a case for reformation; the deed being the last express agreement on the subject would be *prima facie* evidence that the change had been mutually agreed on.

The next inquiry is, does the evidence clearly and satisfactorily show that the defendant company agreed to take an assignment from Savary of a lease executed or to be executed to him by the complainants, according to the contract in the option, and without the words "or until the exhaustion of the rock required to be mined under this lease?" In order to show the affirmative they offer the evidence of Mr. Smith, taken on interrogatories in North Carolina, while he was on a sick bed. He testified that he negotiated the option with Charles P. Savary, who is agent or represented himself as agent, of the Buttgen-

VOL. 53, JANUARY TERM, 1907.    821

Griffin et al. v. Societe Anonyme la Floridienne et al.—Opinion.

bach Company; that Savary told him he (Savary) was such agent, and that Buttgenbach paid him $500 for every tract of land upon which he found a deposit of 10,000 tons of phosphate. It is insisted that soon after Savary obtained the option that the defendant company began prospecting the land, and that when Savary sent the lease to North Carolina to be executed he sent a letter with the lease requesting that the complainants execute an agreement authorizing him to transfer the same to Buttgenbach & Co.; that when the lease was delivered at Inverness, on the 22d of October, 1902, it was delivered either to A. S. Anderson, general superintendent of the company, or to Judge McConathy, the counsel of said company; that after the delivery of the lease on the 17th of November, 1902, A. S. Anderson wrote a letter to Mr. Smith, in which he stated to him that the lease should have been transferred by Savary to the defendant company, but that Mr. Warnock, who wrote the letter, made a mistake and had written the consent for a transfer to J. Buttgenbach & Co., and asking that the latter be authorized to transfer the lease to the company. It is insisted that these circumstances prove that Savary was the agent of the defendant company in securing the option. On the contrary, it appears from the evidence of Mr. A. S. Anderson that Savary was not acting for the company in securing the option; that he did not do so at its instance; that he was not in the employment of the company; that he was a broker and went around getting up lands, and offering them to the different phosphate companies; that Savary offered the lease in question to the company, and there was an agreement with Savary that the company would pay him a dollar a ton, provided the company took it. It appears from the written transfer of the lease made by

Savary to the company marked Exihibit "C," to the bill, that Savary was to be paid by the company fifteen cents per ton royalty on all phosphate mined or required to be mined under the lease, and that in the event the defendant company should fail to carry out the terms of the lease it should revert to him. It also appears that when the lease and transfer of the same was delivered on the 22nd of October, 1902, at Inverness, the defendant company by its attorney, Judge McConathy, delivered the company's check to Mr. Smith of $5,000 for advance royalties, and at the same time delivered the company's check to Savary for $800 or thereabouts, in advance payment of his share in the royalties. Savary was put on the stand as a witness by complainant, but was not asked whether or not he represented the defendant company in taking the option from Smith and Borden. Objections were made by the defendant company to the testimony of Mr. Smith contained in the interrogatories and answer, but no ruling thereon is given in the record. It is plain, however, that agency cannot be proved by the mere declaration of a supposed agent. Orange Belt Railroad Co. v. Cox, 44 Fla. 645; Lakeside Press, etc., v. Campbell, 39 Fla. 523; 16 Cyc. 1005-6; Francis v. Edwards, 77 N. C. 271; Grandy v. Ferebee, 68 N. C. 356; Royal v. Sprinkle, 1 Jones' Law (N. C.) 505. It seems to us the complainants have signally failed to show clearly and satisfactorily that Savary was the agent of the defendant company in negotiating the option with complainants, but the preponderance of the evidence shows that Savary was acting on his own behalf, as an independent party. It follows, therefore, that the words of the proposed contract contained in the option are not controlling as to the words which were to be used in the contract with the defendant company.

It is next insisted by the appellants that the objectionable words "or until the exhaustion of the rock required to be mined under this lease," were inserted in the lease after its execution and delivery, and without consideration. To sustain this contention Mr. Smith says that they were not in the lease as it was originally executed in North Carolina, but were inserted after the lease had been delivered by him to the agent of the defendant company at Invernesss on the 22nd of October, 1902, and after the advance payment had been made, and without any consideration, and without the consent of Borden. Mr. Savary testifies that he wrote a letter to W. H. Smith dated at Floral City, Fla., on October 14th, 1902, inclosing the lease contract to be executed in Northh Carolina; that the lease contract was drawn in accordance with the option contract, and that he thinks the words "or until the exhaustion of the rock required to be mined under this lease" were inserted when Mr. Smith came down from North Carolina to close the lease with the Buttgenbach people—at least that was when his attention was called to the change, and that when his attention was called to it, Mr. Smith had his money. Mr. Smith also says that he went over from Floral City to Inverness and met Judge McConathy and A. S. Anderson in front of the hotel. After a short conversation with Mr. Anderson, he said: " 'Mr. Smith, I presume you have come down to execute the lease?' I said, 'Yes, I have got it executed and all delivered.' I also said, 'You have not carried out that contract. You have only prospected a small portion, Mr. Cox tells me about 1¼ acres.' He says, 'Mr. Smith, it is very expensive to prospect a piece of land right at once, but we will prospect the whole place; we have, however, prospected enough to satisfy us that we are justified

in paying you the amount of money, and I am here pre-
pared to pay it to you.' Therefore I handed him the lease
and he gave me the check, if I remember correctly, signed
by the Buttgenbach Company for $5000." Mr. Smith fur-
ther testified that Mr. Anderson (the manager) said to
me: "You remember that this contract was copied from
one that contained 10 or 11 thousand acres of land, that
only contains 80 acres. We are going to put up a plant
on your place; the capacity will be from 15 to 20 thou-
sand tons per year, and if we should mine out the rock
that this contract calls for in a shorter time, or five or
six years, we would not like to have the $5,000 rental to
follow after the amount had been mined out." I said to
Mr. Anderson: "You are dealing with honest, honorable
men, and we would not receive pay for the same thing
twice. I further said, I do not know how we can change
this thing now. It has been executed, delivered and paid
for, and my partners are in Goldsboro, but we will do
anything that is right." I think Judge McConathy sug-
gested, after reading it over, that we insert in here the
words, 'unless the rock is sooner exhausted,' and I agreed
to it, because I did not want anybody's money without
value and anybody's money twice for the same thing. It
was all done after the delivery of the lease and the pay-
ment of the money, without consideration whatever, only
as an honest intention to do right. I do not remember
whether Judge McConathy inserted the clause in the orig-
inal lease. It was one or the other." Mr. Smith undertakes
to give conversations more than two years and a half after
they are alleged to have occurred. He was on a sick bed, and
as we understand from the assertions of solicitors for
appellants in argument, on his dying bed. The facts
which he states with reference to the time when the words

which are objected to were inserted in the lease, and the circumstances connected therewith, are absolutely irreconcilable with the evidence of Judge McConathy, Mr. Warnock and Mr. Anderson. Mr. Anderson says he met Mr. Smith for the first time on the occasion of closing the deal he had some interest in—in the forenoon of the day; that he left Inverness on the same day on the northbound train between one and two o'clock; that when he left the lease had not been delivered; that it was not delivered to him; that he left the check for Mr. Smith with Judge McConathy; that the lease was not delivered to him; that he had no recollection of the conversation with Mr. Smith about inserting the words which are objected to in the lease; that he did not insert them himself; that he recollects no discussion with Mr. Smith about them; that he thinks he would have recollected such a conversation if it had occurred; that as he recollects, the clause was in the lease when he first saw it at Inverness in the morning before the lease was delivered, and that such a clause is usual in all leases he had drawn up, or had caused to be written for the company.

Mr. Walter F. Warnock, the clerk of the circuit court for Citrus county, testified that he was acquainted with Mr. Savary and Mr. Smith—not well acquainted with the latter, having seen him five or six times; that he drew the option for a lease between Savary of the one part and Smith and Borden on the other; that Smith paid him for drawing it; that at the time of drawing the option, he made four or five carbon copies of that part which was the contract or lease; that Judge McConathy was at his office in the evening of the 15th of October, 1902, and the next morning, examining the abstract of title to the land embraced in the suit; that the clause "or until the

exhaustion of the rock required to be mined under this lease" was not in the original contract contained in the option; that he inserted it himself on the suggestion of Judge McConathy on the morning of the 16th of October, 1902; that he wrote a letter to Mr. Smith for Savary and the lease and letter were mailed to Mr. Smith at Goldsboro, North Carolina; that the date of the letter was erroneously stated as the 14th of October, when it should have been the 16th; that Judge McConathy dictated that part of the letter which had reference to the manner of executing the lease (he identifies the letter already in evidence as the letter he wrote) ; that he was present at the time the lease was delivered in his office at Inverness; that it was delivered in the evening of the 22nd of October; that Mr. Savary, Mr. Smith, Judge McConathy and himself were present; that the payment was made by Judge McConat'y with a check of Buttgenbach & Co. on New York; that Mr. A. S. Anderson was not present at the time the payment was made, but left because he could not wait for Savary to get back from a hunting expedition; that Anderson left about noon; that Savary got to Inverness late in the evening of the 22nd. He further testifies that when parties called for copies of the lease he used the carbon copies he had made in writing the original option and interlined with a typewriter the words in, regard to the exhaustion of the rock. He made those copies originally for his own convenience. The interlineation took just a line across the page. The letter which he wrote for Savary begins: "Enclosed herein please find copy of contract to be executed and acknowledged by yourself and wife and Mr. E. B. Borden, Jr., in accordance with your option to me of the first of September," and he was asked whether the letter calls attention to the

interlined words. He answered "it did not seem to," and said he did not call attention to the interlineation because it was none of his business, he was writing for Savary, and it was nothing to him one way or the other; that the matter was not discussed.

Warnock testified that either he or Savary mailed the letter and lease to Mr. Smith. Savary acknowledged the signature to the letter as his own.

Judge McConathy testified that he was a practicing lawyer at Ocala, Fla.; that he examined the title to the lands involved for Buttgenbach & Co.; that he did so at Inverness, between the 15th and 16th of October, 1902; that when he went to Inverness he met Mr. Warnock in the clerk's office, who was apparently representing Mr. Savary in the matter of getting up the papers—lease; that to the best of his recollection he called to Warnock's attention that there should be a clause in the lease providing that the lease should expire upon exhaustion of the rock; that Warnock was writing to Smith, and he spoke to Warnock about the importance of cautioning Smith concerning the proper execution of the instrument; that if the disputed clause was not already in the lease he called Warnock's attention to it and had him insert it. His impression is that he inserted it that day; that Buttgenbach & Co.'s leases had such a clause; that he had been their attorney since 1898 or '9; that he went to Inverness again on the 21st of October, 1902, for the purpose of receiving the lease and closing the transaction; Mr. A. S. Anderson was there on the morning of the 22nd of October, the day the lease was delivered, and remained until the arrival of the train going north, which was about 11 or 12 o'clock, when he left and was not there any more during that day; that Savary reached Inverness

about 3 o'clock on the afternoon of that day, and the business was transacted; that they had to await the arrival of Savary, who with his wife, arrived in the afternoon, and executed the assignment, and thereupon the assignment and lease was delivered to him (McConathy) about 4 o'clock in the afternoon; that he turned over the checks, one to Savary and one to Smith, for the advance royalties; that he is quite positive no change was made in the lease; that he would not have done so after its execution; that he is positive no such conversation occurred between himself and Smith about inserting the words "unless the the rock is sooner exhausted," after the execution and delivery of the lease, as Mr. Smith gives in his testimony. The complainants sought to require the defendant company to produce and file the original lease, but the officers of the company whose duty it seems to have been to have care of the company's papers, all testified that they had searched for it, but did not have and could not find said original lease, and did not know where it was. This circumstance is insisted upon as very damaging to the contention of the defendant company, as its presence would have settled the question whether the interlineation of the clause objected to was in the handwriting of Mr. Anderson or Judge McConathy, as Mr. Smith contends, or was made by Mr. Warnock with a typewriter. There is nothing in the record which authorizes us to infer that this original lease was withheld from a sinister motive. It is evident that Mr. Smith was mistaken in saying that Mr. Anderson did it after the delivery of the lease to the defendant company, because Anderson is clearly shown to have left Inverness before the transaction was closed and the lease delivered. It seems somewhat improbable that a lawyer of good standing

would have inserted such an interlineation in a written contract after its execution and delivery, in his own handwriting, and especially in the absence of one of the parties to the contract, whose interests would be seriously affected thereby and without any written explanation upon the instrument showing when, how and why it was done.

There is some confusion and errors in the dates of some of the transactions and some other slight circumstances which are dwelt upon by the appellants, but giving them all due weight, we do not think they are of any special probative value, and it would add to the prolixity of this opinion to go into a minute analysis and discussion of them. The circuit judge decided against the contention of the appellants, and we are unable to say that the complainants have made out their case in so clear and satisfactory a manner as to justify us in reversing his decree.

The circuit judge recites in his order making his findings on the facts that on final hearing, complainants asked leave of the court in the case the court should come to the conclusion that the words alleged to have been placed in the contract after the signing, were, as a matter of fact, put into the contract when it was sent to North Carolina for execution, to allow complainants to amend their bill according to these facts. The circuit judge denied this request, and it is argued here that in doing so, he erred. The issues were made up on the precise allegation that the objectionable clause was inserted after the execution and delivery of the contract. The bill was sworn to by the complainants, and the answer denies this allegation and sets up as a defense that the clause was inserted in the contract when it was written and sent to North Carolina for execution. No exception was taken to

the defense made in the answer. Passing by the question whether any proper application to amend was made, it is undoubtedly the law that in a proper case a complainant may be permitted to amend the bill on final hearing so as to meet the proofs as made, if they entitled him to relief. But this is not an indiscriminate rule. We have discovered no case which authorizes such an amendment inconsistent with the allegations of the original bill. In Seymour v. Long Dock Company, 17 N. J. Eq. 171, it was held that where upon the final hearing, or even after appeal it appears clearly from the evidence that the complainant has a case which entitled him to relief, but which by reason of some defect or omission in the charges or allegations of the bill, is not brought fairly within the issue, he will be permitted to adapt the allegations of the bill to the case as proven. When the proposed amendments would change the issue, or introduce new issues, or materially vary the grounds of relief, they must be introduced by supplemental bill. It is further held that such an amendment is a matter of indulgence to be granted in the discretion of the court. In Codrington v. Mott, 14 N. J. Eq. 430, it is held that amendments are allowed in equity with great liberality, but as a general rule, amendments which seek to make a new case inconsistent with that originally made, if allowable at all, should be applied for and made before the cause is at issue. It is also held that applications to amend should be made promptly after the necessity for the amendment has been discovered. In one of the cases cited by the appellants, The Tremolo Patent, 23 Wall. (U. S.) 518, text 527, Mr. Justice STRONG says: "It is true that an amendment which changes the character of the bill ought not generally to be allowed, after a case has been set for a hearing,

and still less after it has been heard.  The reason is that the answer may become inapplicable if such an amendment be permitted."  It appears that the only amendment desired was conditioned on the judge's finding the facts to be those set up in the answer by way of defense, and inconsistent with allegations of the bill, and the plaintiff's testimony.  To have permitted such an amendment would have made a new case.  To have made a case at all, it would have been necessary to allege that complainants did not read the contract as it was sent to them, and to have given some reasonable explanation why they did not do so.  A new answer would have been necessary, and new testimony upon the new issues would have been required.  We find no error in the decree from which the appeal is taken, and the same is affirmed at the costs of the appellants.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.