AMERICAN FRUIT GROWERS, INC., v. M. VIRGINIA WOODLEY

156 So. 689.

Opinion Filed October 6, 1934.

Petition for Rehearing Denied October 22, 1934.

*Maguire & Voorhis,* for Plaintiff in Error;

*T. C. Cork,* for Defendant in Error.

Brown, J.—The defendant in error, M. Virginia Woodley sued the plaintiff in error, American Fruit Growers, Inc., in February, 1933, alleging that the plaintiff had sold and delivered and that the defendant had purchased from the plaintiff all the oranges growing on a certain grove at and for the agreed price of $1.50 per field box to be delivered by the plaintiff to the defendant on the trees at said grove; that defendant had received said oranges and disposed of same and had failed and refused to pay the plaintiff the purchase price thereof, but had only paid the

plaintiff the sum of $151.64, and that defendant was indebted to the plaintiff on the purchase price in the sum of $450.36. The declaration also contained a common count for oranges sold and delivered.

The defendant filed pleas denying the purchase by the defendant, and a special plea that the defendant had received the oranges from the plaintiff as her marketing agent to be packed, picked, shipped and marketed by defendant for plaintiff, the defendant agreeing to pay and remit to plaintiff the net return received, therefrom after deducting all costs and expenses of handling and marketing, and that the defendant had paid the plaintiff such net return by delivering to plaintiff in full settlement therefor its check, which check plaintiff received and still retains.

So the issue here, as in the case of Chase & Co. v. Miller, 81 Fla. 472, 88 So. 312, was whether the plaintiff sold the oranges to the defendant or whether she merely consigned them to the defendant to be sold by the defendant as the marketing and sales agent of the plaintiff.

It was held in the case just cited that where under the general issue upon the common count for goods bartered and sold, or goods sold and delivered, the plaintiff relies upon a promise as to the price to be paid made by a person supposed to be acting as agent for the defendant, the burden of proof is upon the plaintiff to prove the authority of such person to bind the defendant by a contract of sale at an agreed price, and that the declarations of a person supposed to be acting as another's representative or agent are not alone sufficient to prove his authority. The opinion intimates that there was not evidence of authority other than the statement of the agent. In the opinion, which was written by Mr. Justice ELLIS, it was said:

"We do not find in the evidence adduced that the plain-

tiff showed or undertook to show Mr. Waterman's authority from the defendants to bind them by any contract to pay any certain price, or even to buy the potatoes at all. That was one of the elements in the plaintiff's case necessary for him to establish. . There could be no sale if there was no purchase. A delivery of the potatoes to the defendants upon Mr. Waterman's request and an acceptance of them by the defendant might imply a sale, but could not imply any certain price to be paid. The authority to promise that price on behalf of the defendants had to be shown, but the so-called agent's declaration as to such power, unknown to the defendants and unratified by them, are not sufficient to establish the authority. See Griffin v. Sociaete Anoyme La Floridienne, 53 Fla. 801, 44 South. Rep. 342; Martin & Sutherland v. Johnson, 54 Fla. 487, 44 South. Rep. 949; Saussey v. South Florida R. R. Co., 22 Fla. 327."

In the case at bar, there was evidence tending to show actual or apparent authority on the part of the defendant's agent to purchase the fruit as alleged in the declaration. Mrs. Woodley testified positively that the defendant's packing house manager had purchased the fruit from her on the terms alleged in the declaration, and although the packing house manager denied this, the jury were authorized to believe Mrs. Woodley's version of the contract, which they manifestly did believe. Furthermore, her testimony on that point was corroborated by that of another witness. The real question in this case is whether there was sufficient evidence that the defendant's packing house manager had actual or apparent authority, as agent for the American Fruit Growers, Inc., to purchase the plaintiff's fruit. It also appears from the testimony of one of the witnesses produced by the plaintiff in error, that the defendant had,

‧through the manager of its packing house at Ocoee, later purchased from Mrs. Woodley tangerines at an agreed price per box and paid for the fruit in accordance with the contract. The sales manager of the defendant testified that the defendant did sometimes buy fruit, though his principal business was the marketing of fruit on a consignment basis; that the packing house manager who, Mrs. Woodley claims, bought the fruit from her, was at times authorized to buy fruit outright; that when a packing house manager was authorized to buy fruit, this authority was communicated to such agent, but not to the seller; that the defendant's agents were instructed not to make any misrepresentations to the growers; that if they did make any such misrepresentations that they went outside their instructions; that the seller is not advised whether the proposed purchase by the representative of the American Fruit Growers is approved or disapproved, but must rely upon statements made by the defendant's agent. It thus appears from the testimony that the defendant is not exclusively a marketing agency but that it does also purchase fruit from the growers at an agreed price and sells the same for its own account.

It would seem that this case falls within the principles laid down in the case of Bush Grocery Co., v. Conely, 61 Fla. 131, 55 S. 867, the headnotes in which case read as follows:

"1. Where a principal has by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as

against such third person, from denying the agent's authority.

"2. Whether or not an act is within the scope of an agent's apparent authority is to be determined, under the foregoing rule, as a question of fact, from all the circumstances of the transaction and the business.

"3. Where one of two innocent persons must suffer for the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences.

"4. If one holds another out to the world and accredits him as his agent he is bound by that person's acts done within the scope of the agency thus given him. In such cases the question is, not what authority was intended to be given to the agent, but what authority was the third person dealing with him justified from the acts of the principal in believing was given to him." See also 2 C. J., 832, R. C. L. 853-855.

In the light of the foregoing principles, the special charge requested by the defendant was calculated to mislead the jury, in that it omitted the element of apparent authority and the trial court was justified in declining to give it. The general proposition that the burden was upon the plaintiff to show by a preponderance of the evidence that the defendant purchased the crop of oranges as alleged in the declaration, acting by "its lawfully authorized agent with authority to purchase at a given price," was contained in the court's general charge.

We hardly deem it necessary to review all the evidence in the case, as we think it appears from the references above made that the court was free from error when it submitted the case to the jury and when it denied the motion for a new trial.

784

The judgment of the court below should therefore be affirmed.

It is so ordered.

WHITFIELD, TERRELL and BUFORD, J. J., concur.