## ALICE M. McCULLOUGH, v. THOMAS O. McCULLOUGH

23 So. (2nd) 139
July 10, 1945
Rehearing denied September 15, 1945.

June Term, 1945
Division B

*Vincent C. Giblin* and *W. W. Colson, Jr.,* for appellant.

*Smathers, Thomas & Maxwell* and *John G. Thompson* and *L. S. Bonsteel,* for appellee.

THOMAS, J.:

The appellee-husband sued the appellant-wife for divorce charging her with habitual intemperance. An amendment to the bill was filed, but this pleading was stricken upon motion of the defendant, and subsequently withdrawn by the plaintiff; so testimony was eventually taken on the original bill and the answer, presenting the lone issue whether the defendant had been guilty of the misconduct alleged.

After all evidence had been introduced in behalf of both parties, except some testimony as to attorney's fees and in brief rebuttal, the plaintiff sought permission to file an amendment to his bill averring in most general terms that his wife had been extremely cruel to him because of her indulgence in intoxicants and for the reason, too, that her "neglect . . . to care for her . . . actions in public and the confusion, fussing, nagging and general home conditions made the marital obligation an intolerable burden . . ." He charged that his health had been endangered by her misconduct.

Despite the protest of the defendant, the amendment was allowed, but the order to that effect was not filed until 7 June 1944, the day the special master made his report, nor was it entered until the following day. It was this amendment to which the master referred when he found: "The allegations of the bill of complaint as amended are so general in their nature, except for the charge of habitual intemperance, that it is difficult for me to specify just what particular acts of defendant are relied upon by plaintiff as constituting extreme cruelty . . ." After a painstaking and exhaustive digest of the testimony he concluded that habitual intemperance had not been proved. This, then, disposed, adversely to the plaintiff, of the charge he had chosen as a basis for his suit. The master expressed the opinion that plaintiff should amend the bill to meet the proof, presumably of extreme cruelty, and then remarked that he was "making this report upon the theory that plaintiff will, by permission of the Court, amend his bill of complaint . . ." Nevertheless no further amendment was made, and the chancellor eventually heard and overruled all exceptions to the master's report and ratified, approved, and confirmed it.

Apparently, then, the master was sustained in his view that habitual intemperance on the part of the defendant had not been established; that the amended bill was insufficient except as to that charge; that an amendment should be made to comply with the proof of another ground for divorce. Yet no such amendment was ever offered. It is patent that master and chancellor agreed to the conclusion that the plaintiff could not prevail so far as the charge of habitual intemperance was concerned, and that phase of the controversy may be eliminated from further consideration. If the plaintiff was to be awarded a decree on the ground that his spouse had been extremely cruel to him he had to rely on the amendment, already condemned by the master, or present a new one—which he never did. It is difficult for us to understand the chancellor's attitude because in the same decree he confirmed the report, including the recommendation that an amendment to meet the proof be filed, and recited that "the plaintiff [had] maintained by competent evidence all the material allegations of his bill of complaint as amended . . ." thereby recognizing the amendment the master thought wholly insufficient.

The matter of amending pleadings is one within the judicial discretion, but of course the appellate court may review the ruling to determine whether there has been an abuse. It is true that there is an inclination on the part of the courts to be liberal in allowing amendments, to the end that fundamental justice may not be cast upon the reefs of technicality, but this liberality if too extreme may well result in injustice; so there must be some restraint on the extent of such amendments and the time within which they are permitted. Some courts have expressed the thought that this liberality is more pronounced in the early stages of a trial and gradually diminishes as the contest progresses. Todd v. Bettingen, 102 Minn. 260, 113 N.W. 906. The amendment we have under study came very late in the trial. For some reason not explained to us, the order allowing it was withheld from the record until the master had reported. Meanwhile he suggested an amendment, obviously a new and sufficient one, to conform to the proof, and upon the assumption that this course would be followed he recommended divorce on the ground he anticipated would be included in the amendment.

Amendments to meet the proof are generally held not to be allowable if they change the theory of the case or the cause of action. This court in Griffin et al. v. Societe Anonyme La Floridienne, J. Buttgenbach & Co., et al., 53 Fla. 801, 44 So. 342, recognized the procedure of amending to correspond with evidence, then observed: "We have discovered no case which authorizes such an amendment inconsistent with the allegations of the original bill." It was also written there that "When the proposed amendments would change the issue, or introduce new issues, or materially vary the grounds of relief, they must be introduced by supplemental bill." The chancery act dispenses with supplemental bills, substituting therefor amended bills, but the principle is equally applicable under the present system of equity pleading. Whether such new matter, varying the ground of relief, changing issues, or offering new one is introduced by supplemental bill under the old practice or amended bill under the new, the protection afforded the defendant would be the same, that is, he should be given opportunity to test the sufficiency of the pleading, or further to defend.

Appellee has cited to sustain his position the case of Kennedy v. Kennedy, 101 Fla. 239, 134 So. 201, where an amendment was allowed enabling the plaintiff to proceed with proof of two grounds of divorce not alleged in the bill, and the action was sanctioned by this court on appeal. Authority given there for the conclusion that the allegations of the amendment were not so palpably inconsistent with those of the original bill as to indicate abuse of discretion on the part of the chancellor in allowing the amendment was Atlantic Coast Line R. Co. v. Feagin, 93 Fla. 1015, 113 So. 89. The last paragraph of this decision, however, contains a statement apropos the underlying principle by which the merits of amendments are gauged. The court said: "We do not believe the rights of the defendant were prejudiced in any way by, permitting the amendments. The defendant had an opportunity to present its defense of law and of fact . . ." In Kennedy v. Kennedy, *supra,* appears the very significant remark: "Application should be made promptly after the necessity for the amendment has been discovered," and on

that point the court cited Griffin v. Societe Anonyme La Floridienne, *supra*. Leave to amend was sought in the former case "after taking the testimony of two witnesses before the chancellor." We have examined the original record in this court and have found that an immediate answer had been filed. Actually the chancellor gave the movant an hour and a half to present his amendment, and upon the expiration of that period it and the answer to it were filed, whereupon introduction of testimony proceeded with dispatch. It is obvious from what we have said at the outset that there is a vast difference in the situation indicated by the record in Kennedy v. Kennedy, *supra,* and the facts here.

It seems to us that the nature of the amendment proposed and allowed, the lateness of the application for permission to file it, the tardiness in recording the order authorizing it, not to mention the reliance of the master on an anticipated amendment, and the inconsistencies between report and decree and within the decree itself, are circumstances establishing such a departure from the recognized rules governing chancery procedure as to require entry of a reversal by this court.

Despite our conviction that the procedure was so erroneous as to warrant reversal, we are not content to dispose of the controversy on that point alone. Nearly four hundred pages of testimony were taken in Miami and Toledo, all of which we have carefully read to determine whether there was such proof of extreme cruelty on the part of the wife that an amendment to meet it would entitle the husband to a decree on that ground. In our opinion such a step could have availed him nothing, for failure to prove her guilty of such misbehavior was as dismal as his failure to establish habitual intemperance. The testimony he relied upon related to incidents that were relatively inconsequential, and even this was discredited. Both the rebuttal of the testimony in his behalf and the proof of the excellence of his spouse's character and her fine qualities as a wife and mother were given by numerous witnesses obviously of integrity and good standing in the community and peculiarly possessed of information on these subjects. It is very significant that among them were

plaintiff-husband's mother, his father, his brother, and his son.

Were we to determine this case on the lone question of procedure our decision might be construed as holding out some hope to the plaintiff that he might succeed on the proof offered if, on remand, a valid amendment charging extreme cruelty should be filed. This would probably result in the additional expense of taking testimony of the defendant in rebuttal and the cost of another appeal. To prevent the incurrence of any more costs we say now that the decree was erroneous and could not, because of the nature of the testimony, be made correct, even if a faultless amendment were presented charging extreme cruelty, for it would not be supported by the proof the amendment would be calculated to meet.

Reversed with directions to dismiss the bill.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.