LILLIAN J. WATKINS, a widow, and LILLIAN J. WATKINS, as Executrix of the Estate of SUE D. BARR, deceased, and OCALA MANUFACTURING ICE AND PACKING COMPANY, v. JOHN BARR WATKINS, JR., by his next friend and W. B. Watson, JR.

166 So. 577.

Division A.

Opinion Filed March 13, 1936.

*Hampton, Jordan & Lazonby,* for Appellants;
*Baxter, Clayton & Watson,* for Appellee.

BROWN, J.—The appellee (complainant in the lower

court) filed a bill of complaint, seeking to re-establish a lost deed, and for an accounting.

The allegation of the bill is that on July 10th, 1922, the complainant's father and mother, John Barr Watkins and Carrie B. Watkins, transferred by deed certain lands, in Alachua County, which had been owned by the family for a century, to the complainant's grandmother, Sue D. Barr, as go-between or trustee, and that she in turn conveyed to the complainant; that no consideration passed between the parties; that both deeds were identical, except as to the names of grantors and grantees, being drawn at the same time and executed on the same day; that the deed to the infant complainant had been lost or destroyed and was never recorded; that Lillian J. Watkins, one of the defendants, daughter and sole devisee of Sue D. Barr, later wrongfully deeded the said lands to the Ocala Manufacturing Ice and Packing Company, the appellant corporation, and therefore stands as trustee for the complainant and should account in full.

The testimony taken in behalf of the complainant tended to substantiate the theory of the bill. And the testimony of appellee's mother also tended to show that John Barr Watkins was in debt; that the transfers were made to preserve the property from the creditors of John Barr Watkins, and to place the title thereto in his son, John Barr Watkins, Jr., then five years of age; that no consideration passed; that the deed from Sue D. Barr to John Barr Watkins, Jr., was delivered to Carrie B. Watkins and placed in her safety deposit box and that several years later she discovered that the deed had disappeared; that it cannot be found.

The answer of the defendants (appellants) admits the transfer from John Barr Watkins and Carrie B. Watkins to Sue D. Barr, and admits the transfer from Lillian J.

Watkins to the Ocala Manufacturing Ice and Packing Company, but denies any transfer of the lands in question to the complainant, or any argument to transfer, and denies all allegations of the bill of complaint tending to show Sue D. Barr as a trustee or go-between in favor of the complainant.

The defendants produced testimony tending to substantiate the answer, and produced further testimony tending to show that Mrs. Sue D. Barr, on July 10, 1922, loaned John Barr Watkins and his wife, Carrie B. Watkins, $15,000.00 and received a note signed by them in such amount and took as security the deed to the land involved in this suit; that Mrs. Sue D. Barr, before her death, went to Mr. Hampton, her attorney, and gave him the said note and instructed him to foreclose the deed to Mrs. Barr as a mortgage; that he, as instructed, drew the bill of complaint, but before suit was filed John Barr Watkins convinced both Mrs. Sue D. Barr and Mr. Hampton that it was useless to go to the expense of a foreclosure suit, as he, John Barr Watkins, felt that he could never repay the $15,000 and that his grandmother, Sue D. Barr, could keep the deed; that the note was left in the Hampton firm safe until after the institution of this suit; that Mrs. Lillian J. Watkins and Mrs. Sue D. Barr, in her lifetime, paid the taxes on the property in question, although John Barr Watkins was in possession and using the place as his home; and finally that no deed was executed to John Barr Watkins, Jr., the complainant, as alleged in the bill of complaint.

Mrs. Carrie B. Watkins testified that she never gave Mrs. Sue D. Barr any note, and that although her name appeared as one of the makers, it was not her signature.

At the final hearing on bill, answer and testimony the Chancellor excluded and refused to consider the testimony

offered by the defendants below with regard to the $15,000 note and all testimony tending to show that a $15,000 consideration passed between Sue D. Barr and John Barr Watkins and that the deed was given to Sue D. Barr as security therefor, and entered a final decree in favor of the complainant. Defendant Lillian J. Watkins, fourteen days after the decree was rendered, filed a motion to amend the answer, so as to add an allegation that the purported warranty deed was in fact a mortgage. This motion was denied.

In the order denying the motion to amend, the court states that said motion was interposed after petition for rehearing had been heard and denied.

This is a suit to establish a title already vested in the complainant as distinguished from one in which a reconveyance is sought. In Kahn v. Wilkins, 36 Fla. 428, 18 So. 584, this Court held that a conveyance between a fraudulent grantor and grantee is good as between the parties and vests title in the grantee, except as to those persons actually defrauded. In the case before us no creditor is involved and none complain. As between the parties here involved none can be heard to complain that the transfer from John Barr Watkins and Carrie Watkins to Sue D. Barr and the alleged conveyance by Sue D. Barr to John Barr Watkins, Jr., was in fraud of creditors.

In Miller, et al., v. Berry, 78 Fla. 98, 82 So. 764, this Court held that: "The maxim 'He who comes into equity must come with clean hands' does not apply to wrongs committed at large by those who resort to equity for relief, but is confined to misconduct in the matter of litigation and must concern the opposite party." And in the able opinion in that case, which was written by Circuit Judge Reaves, it was said:

"A court of equity is not an avenger of wrongs committed at large by those who resort to it for relief, however careful it may be to withhold its approval from those who are involved in the subject-matter of the suit, and which prejudicially affect the rights of one against whom relief is sought."

The appellee was only five years of age at the time of the transaction. As a general rule, estoppel cannot arise against an infant. In 31 C. J. 1005, it is aptly said:

"If an estoppel can arise against an infant, all the elements of an estoppel must concur. The conduct of the infant must have been fraudulent, and believed on, and acted upon by the other party."

These elements could certainly not have been attributed to this infant, nor is laches imputable to an infant. 10 Ency. Pl. Pr. 590.

This suit was not instituted to determine whether the instrument given to Sue D. Barr was a mortgage or a deed, but is a suit to establish a subsequent or contemporaneous deed by Sue D. Barr to the infant appellee.

The appellants contend that the introduction of the note and the evidence thereof was to rebut the complainant's allegation that no consideration passed, and was therefore admissible. If this evidence thus sought to be introduced would show that consideration actually passed for *the deed* from John Barr Watkins and wife to Sue D. Barr it would be admissible to disprove the complainant's allegation that no consideration passed. But the evident purpose for which this evidence was offered was to show, not that there was a consideration for the deed, but something entirely different; that is, that there was in law no deed, but in fact a mortgage; and there was no predicate in the defendant's pleading for such a showing. The answer admitted the ex-

ecution of the deed to Sue D. Barr, as alleged in paragraph 1 of the bill of complaint, and nowhere alleged that it was given to secure a debt, or that it was in legal effect a mortgage. So the chancellor should not be held to have been in error in excluding evidence for which there was no proper predicate in the pleadings. The allegata and probata should correspond.

Section 26 of the 1931 Florida Chancery Act, Section 4902 (7) C. G. L., Sup. 1934, reads as follows:

"AMENDMENTS GENERALLY. The court may, at any time in the furtherance of justice, upon such terms as may be just, permit any process, proceeding, pleading or record to be amended, or material supplemental matter to be set forth in an amended pleading. The court, at every state of the proceedings, must disregard any error or defect in the proceedings which does not affect the substantial rights of the parties."

The above section of the Florida Chancery Act was taken from Rule 19 of the Federal Equity Rules. The Federal Courts, in interpreting Rule 19, have held that the allowance of amendments is discretionary with the court, but subject to review where the discretion is abused. McCarthy's Fla. Chancery Act. Ann. 2nd Ed. p. 68.

In Griffin v. Societe Anonyne La Floridienne, *et al.*, 53 Fla. 801, 830, 44 So. 342, this Court, speaking through Mr. Justice HOCKER, said:

"Passing by the question whether any proper application to amend was made, it is undoubtedly the law that in a proper case a complainant may be permitted to amend the bill on final hearing so as to meet the proofs as made, if they entitled him to relief. But this is not an indiscriminate rule. We have discovered no case which authorizes such an amendment inconsistent with the allegations of the orig-

inal bill.  In Seymour v. Long Dock Company, 17 N. J. Eq. 171, it was held that where upon the final hearing, or even after appeal it appears clearly from the evidence that the complainant has a case which entitled him to relief, but which by reason of some defect or omission in the charges or allegations of the bill, is not brought fairly within the issue, he will be permitted to adapt the allegations of the bill to the case as proven.  When the proposed amendments would change the issue, or introduce new issues, or materially vary the grounds of relief, they must be introduced by supplemental bill.  It is further held that such an amendment is a matter of indulgence to be granted in the discretion of the court.  In Codrington v. Mott, 14 N. J. Eq. 430, it is held that amendments are allowed in equity with great liberality, but as a general rule amendments which seek to make a new case inconsistent with that originally made, if allowable at all, should be applied for and made before the cause is at issue.  It is also held that applications to amend should be made promptly after the necessity for the amendment has been discovered.  In one of the cases cited by the appellants, The Tremolo Patent, 23 Wall. (U. S.) 518, text 527, Mr. Justice Strong says : 'It is true than an amendment which changes the character of the bill ought not generally to be allowed, after a case has been set for a hearing, and still less after it has been heard.  The reason is that the answer may become inapplicable if such an amendment be permitted.' "

Also see Guggenheimer and Co. v. Davidson, 62 Fla. 490, 56 So. 801.

Practically the same principles governing to the amendment of bills apply also to the amendment of answers.  See 1. Encyc. Pldg. & Prac. 495-501, wherein it is observed that ."The instances are rare in which amendments to an answer

have been allowed after the case has been heard and there has been any expression of opinion from the court. When the court is about to sign a final decree, it is too late to amend the answer by filing a plea in bar. On the rehearing of a decree, an answer cannot be amended except by consent of parties." See also 21 C. J. 535-539.

Section 34 of the 1931 Chancery Act provides *inter alis* that "the answer may be amended, by leave of the court upon reasonable notice so as to put any averment in issue, when justice requires it." In his annotations to this section, Mr. McCarthy (Fla. Chanc. Act. Ann. p. 91). says: "this section apparently requires that any amendment in the answer shall be made only by leave of court upon reasonable notice. The court may allow the defendant to set up a counterclaim by amendment to the answer. Terry St. Turbine Co. v. Sturtevant Co. (D. C. Mass.) 204 Fed. 103. But where the amendment setting up a counterclaim is not sought to be made until after a long series of hearings before a master, leave to amend may be refused. Shapiro v. Engel (D. C. N. Y.), 257, Fed. 854. Leave to amend the answer at the trial may be granted, but not where it would raise new issues and take the plaintiff by surprise. First Tr. & Sav. Bk. v. B. R. V. I. Co. (D. C. Mont.), 251 Fed. 320."

It is contended that in the furtherance of justice the defendant should have been allowed to amend her answer to conform to the proofs. If the amendment had been seasonably applied for, and upon reasonable notice, the chancellor might have allowed it without abusing his discretion. Courts of equity are generally liberal in the allowance of amendments.

But appellee contends that even if seasonably applied for the amendment as requested should not have been allowed,

because it sought to amend the original answer only as to paragraph 1 of the bill of complaint and is therefore insufficient, as paragraph 5 of the bill alleges the subsequent execution of a deed from the defendant, Mrs. Watkins, to her co-defendant, and paragraph 6 alleges the execution of a mortgage from such co-defendant to Mrs. Watkins for $5000, the balance due on the purchase price of these lands, which is inconsistent with the proposed amendment to the effect that the deed to Sue D. Barr was merely a mortgage; that her original answer clearly admitted the allegations of the bill to the effect that the instrument of July 10, 1922, made to Mrs. Sue D. Barr by complainant's father and mother, was and is a deed, and that appellant was estopped to deny that allegation by reason of her own deed to her co-defendant, which was a representation that she held the legal title.

In view of all these circumstances, and the further fact that the motion to amend was not made until fourteen days after the final decree was rendered, we cannot say that the chancellor abused his discretion in denying the motion.

The decree and order appealed from will accordingly be, and the same is hereby,

Affirmed.

Whitfield, C. J., and Davis, J.; concur.

Ellis, P. J., and Terrell and Buford, J. J., concur in the opinion and judgment.