432 So.2d 113 (1983)
Clarence ENGLE, Appellant,
v.
Sarkis ACOPIAN and Bobbye Acopian, Appellees.
No. 81-1075.
District Court of Appeal of Florida, Fifth District.
April 27, 1983.
Rehearing Denied June 6, 1983.
*114 Edward J. Richardson of Saxon & Richardson, P.A., Melbourne, for appellant.
Ralph Geilich of Williams & Geilich, Melbourne, for appellees.
SHARP, Judge.
Engle appeals from a final judgment entered after a non-jury trial, which requires him to stop using his Lot 36 in the First Addition to Ocean Park Subdivision, in Brevard County, for business purposes. The appellees, Sarkis and Bobbye Acopian (husband and wife), brought this suit in 1981 to enforce a restrictive covenant of record, which mandates residential use only of the lots in the subdivision. They own Lot 28, four to five lots away from Lot 36 in the same subdivision. We reverse because the record establishes that the Acopians' suit is barred by laches.
This is the second time these restrictions on this subdivision have been considered by this court. In Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980), petition for review denied, 392 So.2d 1375 (Fla. 1981), the owners of four lots in this subdivision filed a suit for a declaratory judgment that the covenants were not binding because of a change in the character of the neighborhood. We held the record did not establish the changes in the neighborhood had materially affected the subdivision, or frustrated the purpose of the restrictions. Although appellees were parties to that suit, Engle was not. That judgment is therefore not binding on Engle, nor dispositive of the issues in this case.
Engle alleged that his lot was not subject to the restrictive covenants asserted by the Acopians. Engle's deed states it is "subject to restrictions of record," and although appellees' proofs should have been more complete, there was no real dispute about the fact that the parties' lots were in a subdivision where the following covenant of record had been upheld at least twice:[1]
Lots 24 to 37 inclusive of this subdivision are restricted as follows:

*115 One dwelling, which may be a duplex, with a garage to each lot. The garage may be a garage apartment. Dwelling to cost a minimum of $1500.00. Buildings to be placed at least fifteen feet back from the North, South and West lines. No building to be placed nearer the Ocean than 210 feet from the West line of the lot. All lots in this addition are restricted to residential use only. [Emphasis added.]
Engle alleged and sought to establish at trial various equitable defenses: waiver, estoppel, laches and acquiescence. The trial court disallowed any of Engle's defenses because of "unclean hands," and it further held that Mrs. Acopian did not have any knowledge that Engle was violating the covenants prior to 1978. The lower court was also confused about the effect of our opinion in Acopian v. Haley on Engle's equitable defenses. These determinations were erroneous, and they mandate a reversal in this case.
The record shows that Engle bought Lot 36 in 1971. At first he used it as a combined residence and real estate office. In 1971-72 he remodeled it, spending $10,000 to $12,000, and used it exclusively as a business office. He had a large (six foot by eight foot) sign in his front yard, which read "Engle Realty, Inc." He also expanded the parking area to accomodate 25 to 28 cars.
In 1977 Engle again remodeled the building on Lot 36, spending some $68,000.00. It was converted back to being a combined business-residential structure. Some $27,000 of the $68,000 was attributable to redoing the business office.
In 1971 the Acopians went to Engle's office on Lot 36 to seek his help in locating a home to rent. He acted as their agent in finding for them the house located on Lot 28. Approximately a year later, he acted as their broker when they bought Lot 28. In 1972 or 1973, Mr. Acopian came to Engle's office to consult him about locating a business property. He admitted he had been aware of Engle's parking lot and sign since 1972.
Mrs. Acopian denied she even noticed Mr. Engle's sign, or the parking lot, or the fact that he was doing business on Lot 36. She testified she did not know Lot 36 was in her subdivision, or that Engle was violating the restrictive covenants.
Engle testified he did not know that his lot was subject to any restrictive covenants against a business use. He denied he had read the restrictions referenced in his deed. The trial judge said this testimony was incredible, because Engle was an experienced real estate broker. Because of that testimony, the trial judge found Engle had come to court with "unclean hands," and he was therefore not entitled to assert any of his equitable defenses.
To the extent this case turns on notice of the restrictive covenants and knowledge of their violation, it is well established that all persons are charged with knowledge of matters properly of record. Vetzel v. Brown, 86 So.2d 138 (Fla. 1956); Daniel v. May, 143 So.2d 536 (Fla. 2d DCA 1962); Tolar v. Meyer, 96 So.2d 554 (Fla. 3d DCA 1957). Because the restrictive covenant was recorded, and was referenced by Engle's, as well as the Acopians' deeds, all three parties to this suit should be deemed to have knowledge of the restrictive covenants. Vetzel; Daniel; Tolar. Further, because Mr. and Mrs. Acopian jointly owned Lot 28, and they were engaged in living there and maintaining it as their marital residence since 1971, notice or knowledge to Mr. Acopian of Engle's business operations on Lot 36 is attributable to Mrs. Acopian as a matter of law. See 86 C.J.S. Tenancy in Common § 130 (1954).
In this case, the application of statutory laches bars the action by the Acopians. Section 95.11(6), Florida Statutes (1981), provides:
LACHES.  Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his rights and whether *116 the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.
This statute applies to equitable actions and modifies an application of the unclean hands doctrine to the extent that when the applicable time period runs, the action is barred without a consideration of whether unclean hands would prevent equitable defenses from being raised, e.g., whether unclean hands would prevent the application of the traditional doctrine of laches. See Jefferies v. Corwin, 363 So.2d 600 (Fla. 4th DCA 1978).
The legal cause of action on a written contract, obligation or liability founded on a written contract would be time-barred five years after discovery of the breach.[2] Some nine years had passed in this case since the Acopians bought their lot and employed Engle as their agent at his place of business on Lot 36.[3]
Although we find that statutory laches bars this action, we point out that the facts presented in this case do not fall within the compass of the unclean hands doctrine. The inequity required by that doctrine must relate to the persons (Acopians) or to the subject matter of this suit (enforceability of the deed restriction).[4] Here, the record does not show Engle acted fraudulently, unfairly or with any kind of trickery, as regards the Acopians and their purchase of Lot 28, or his use of Lot 36 as a business office. His use of his property as a real estate office preceded the Acopians' purchase of their lot, and they knew Engle was using Lot 36 as his office when they bought Lot 28 in 1972.
For the reasons discussed, the judgment appealed is
REVERSED.
FRANK D. UPCHURCH, Jr., J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissents.
The majority opinion predicates reversal on a finding of laches, as a matter of law, on the part of both plaintiffs below. This is accomplished by two alternative routes: (1) by finding laches on the part of Bobbye Acopian because of the appellate court's evaluation of her credibility; and (2) by imputing laches on the part of Sarkis Acopian (an implicit finding of the trial court) to his wife, Bobbye Acopian.
As I see it, in regard to the first alternative route, this court is substituting its determination of a factual issue for that of the trial court in regard to the actual knowledge of Bobbye Acopian that could serve as a basis for finding laches against her. Then, for good measure  and compounding the error  the majority opinion applies a patently erroneous concept of law in attempting to impute knowledge of one joint tenant of property to another joint tenant in regard to a separate piece of property in which neither has ever had any ownership interest.
The trial court found that laches did not apply to Bobbye Acopian because she did not know that Engle was violating a subdivision restrictive covenant until December, 1978. There is support for this factual finding in the trial record in the form of testimony from Bobbye Acopian, which it was within the province of the trial judge to evaluate and either accept or reject as a matter of credibility. There was ample evidence that the house used by Engle for a dual purpose appeared outwardly to be a home, not an office.
In an apparent attempt to evade the legal problem of reversing a trial court's factual *117 findings, the majority opinion then attempts to attribute Sarkis Acopian's notice or knowledge of Engle's business operation on Lot 36 to his wife as a matter of law because the Acopians are joint tenants of Lot 28. This assumption misconstrues the principle that where co-tenants are jointly pursuing a common enterprise as tenants in common, notice to one with respect to the title of common property is generally notice to all, and where one tenant is acting as an agent for his co-tenant, notice to him is notice to them. Ordinarily, however, notice to one co-tenant regarding the common property is not notice to other co-tenants. Such notice, of course, must relate to the common property. 86 C.J.S. Tenancy In Common § 130 (1954). Whatever Sarkis may know about Lot 36 is not imputed, ipso facto, to his wife, Bobbye. They are not co-tenants of Lot 36.
I would affirm.
NOTES
[1] Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980); Johnson v. Hall, Chancery number 24596.
[2] § 95.11(2)(b), Fla. Stat. (1981).
[3] Appellees also argue that Engle established no basis to show he was injured or prejudiced by their delay in filing suit. However, such a showing is not required where the time exceeds the statute of limitations. § 95.11(6), Fla. Stat. (1981).
[4] Watkins v. Watkins, 123 Fla. 267, 166 So. 577 (1936); Dale v. Jennings, 90 Fla. 234, 107 So. 175 (1925); Miller v. Berry, 78 Fla. 98, 82 So. 764 (1919); Pennington v. Pennington, 390 So.2d 809 (Fla. 5th DCA 1980).