COBB, Judge.
This is an appeal by the husband, Michael T. Troiano, from a final judgment of the Circuit Court of Volusia County granting a dissolution of marriage between the husband and wife, and reforming a deed to real property (owned by the husband, wife and intervenor) and granting to the inter-venor an equitable lien on that property located in Lake County, Florida. The inter-venor and appellee, Marie D. Francolino, is the mother of the co-appellee, Mary Ann Troiano. The husband’s appeal is directed to the trial court’s ruling on the issues relating to the real property located in Lake County and raises no issue as to child support, child custody, the dissolution of marriage, or personal property division.
The testimony at trial, construed most favorably in support of the trial court’s judgment, established the following facts:
In July of 1980, the husband, wife and mother purchased approximately 25 acres in Lake County, Florida. One acre of the land subsequently was transferred to Fran-colino to build her home and another to the husband and wife for their home. Prior to the acquisition of the property in Lake County, the parties had owned property in Vero Beach, Florida, as tenants in common, with the husband and wife owning one-half and Francolino owning one-half. Francoli-no testified that she believed the 25 acres in Lake County would be titled in the same way as the Vero Beach property.
After the first contract (which provided for the half and half ownership as tenants in common) was rejected, a second was prepared at the husband’s instructions, and included an addendum stating that the property would be held by the three as joint tenants with the right of survivorship and not as tenants in common. Troiano did not tell his wife or Francolino that the title was to be held differently than was the Vero Beach property. Neither Francolino nor the wife saw or signed the second contract. The wife was in Miami and Fran-colino was in Pennsylvania when the contract was prepared by a lawyer chosen by the husband. With the wife and Francolino away, he alone went to the attorney. He indicated to the attorney he was the mother’s agent, and that she was unable to sign the contract.
Although all three were present at the closing on July 25, 1980, neither the wife nor Francolino was told by Troiano or the attorney of the changes in the title from the former contract. At the closing the attorney dealt primarily with the husband, Michael Troiano. The deed was displayed to him, and when the mortgage was signed it was folded to the signature page and the front page was not visible. Francolino and Mary Ann Troiano relied upon the husband and the attorney to insure everything was in order. After recordation, the deed was returned to the husband in Miami, not to Francolino. Apparently the mother learned of the problem with the title sometime prior to the divorce proceedings, which were initiated in July, 1986, by the husband, and attempted to have the husband and wife execute deeds to correct what she thought at first was only a mistake. The mother claims that she did not learn that the husband made the changes deliberately until the husband’s deposition *1055 was taken during the dissolution proceedings.
After the husband filed a petition for dissolution of marriage in Volusia County, Florida, the wife filed a counter-petition. The mother’s motion to intervene was granted. The trial court granted reformation of the 1980 deed, ruling that the real property (excluding the two small parcels conveyed out) was owned by the husband, wife and mother as tenants in common, with the husband and wife owning a undivided one-half interest and the mother owning the other undivided one-half interest.
Francolino was also granted an equitable lien against the undivided one-half interest of the couple in the amount of $40,553.45 (the sum of $19,118.88 for mortgage payments made by her, $11,772.48 for money she spent on construction of a kennel on the property, and $9,662.09 being the Troia-nos’ share of the downpayment that she paid at the time of purchase).
The first issue raised by the appellant, Michael Troiano, is whether the Circuit Court of Volusia County lacked jurisdiction over the parties’ real estate in Lake County so that the judgment is void in all respects regarding that real estate. Troi-ano contends that, pursuant to section 26.-012(2), Florida Statutes (1987), the Lake County Circuit Court has exclusive original jurisdiction in all actions involving the title of real property in that county. He points out that Black’s Law Dictionary lists actions to foreclose a mortgage or enforce a lien under the definition of “in rem” actions. It is his contention that “reforming a deed and establishing and foreclosing an equitable lien in Lake County” is beyond the territorial jurisdiction of the Seventh Judicial Circuit — i.e., the Volusia Circuit Court.
The appellee, Francolino, responds that the trial court only established the existence of an equitable lien and did not purport to foreclose it. She argues that actions which only incidentally or secondarily involve real property are transitory and may be brought in the county of residence of the defendant. Lakeland Ideal Farm and Drainage District, et al. v. Mitchell, 97 Fla. 890, 122 So. 516 (Fla.1929). She points out that an action for rescission of a contract for the sale of land has been held to be transitory rather than local. Royal v. Parado, 462 So.2d 849 (Fla. 1st DCA 1985); Wheatland Hills Corporation v. Morton, 199 So.2d 122 (Fla. 3d DCA), cert. denied, 204 So.2d 332 (Fla.1967) and 390 U.S. 980, 88 S.Ct. 1099, 19 L.Ed.2d 1276 (1968). Francolino also cites to language in Lake-land: “From a very early period, courts of equity having jurisdiction of the person of the party have exercised the power to compel him to perform a contract, execute a trust, or undo the effects of a fraud, notwithstanding it may relate to or incidentally affect the title to land in another jurisdiction.”
In the instant case, we agree that the trial court had jurisdiction to reform the deed and to establish (not foreclose) an equitable lien. The reformation and equitable lien claims may be deemed incidental to the dissolution wherein the res of the proceeding was the marital relationship between Michael and Mary Ann Troiano. See Publix Super Markets, Inc. v. Cheesbro Roofing, Inc., 502 So.2d 484 (Fla. 5th DCA 1987). Despite the argument in the appellant’s brief, the judgment below does not purport to foreclose the equitable lien.
The second issue raised by the appellant is his contention that Francolino’s claims for reformation and an equitable lien are barred by statutes of limitation and laches. He argues that she received the original deed reciting her one-third undivided joint tenancy on July 25, 1980 (the deed was recorded August 4, 1980). Her complaint as an intervenor was filed on July 1, 1987, almost seven years later.
Section 95.11(3)(k), Florida Statutes (1979) concerning equitable actions on a liability not founded on a written instrument provides a four-year limitation period. If the claims are founded on fraud, the period would be the same. See § 95.11(3)©, Fla.Stat. (1979). Troiano argues that even if the reformation claim is deemed to be an equitable action on a contract, obligation, or liability founded on a written instrument, the five-year period *1056 provided in section 95.11(2)(b) would bar it. Troiano notes that he affirmatively pled the defense of the statutes of limitations and that the trial court made no factual determinations regarding fraud in the final judgment which would have tolled the running of any applicable statute of limitations. Cf. Allie v. Ionata, 417 So.2d 1077 (Fla. 5th DCA 1982), (affirmative jury finding that no fraud had been committed by defendant raising affirmative limitation defense).
In the final judgment, the trial court omitted any mention of a statute of limitations. Troiano urges that it began to run, at least in respect to the reformation issue, at the time of the original closing in July, 1980. Troiano cites to Dovenmuehle, Inc. v. Lawyers Title Ins. Corp., 478 So.2d 423 (Fla. 4th DCA 1985) for the proposition that mere ignorance of the existence of a cause of action, without more, will not toll the running of a statute of limitations. He argues that Francolino has adduced no circumstances to warrant the tolling of any such statute, particularly in light of the fact that she was present at the closing, represented by counsel, and made no objections to the manner in which the title was described in either the deed to her or in the mortgage she executed back to the sellers at that time. Troiano contends that Fran-colino, as a purchaser of real estate, could have discovered any problems existing as to the title to her property with a minimal inquiry at any time after purchase and recordation of the deed. See Armbrister v. Roland Intern. Corp., 667 F.Supp. 802 (M.D.Fla.1987). In other words, Francolino at all times after August 4, 1980, was on constructive notice of the provisions of record in regard to her deed. See Engle v. Acopian, 432 So.2d 113 (Fla. 5th DCA 1983).
Finally, Troiano argues that, pursuant to Florida Rule of Civil Procedure 1.100(a), avoidance of an applicable statute of limitations which is raised via an affirmative defense in an answer must be asserted in a reply to that answer — and Francolino failed to plead any avoidance in a reply. He contends it is not enough to simply deny by operation of law an affirmative limitations defense, if, in fact, the time has run. See City of Brooksville v. Hernando County, 424 So.2d 846 (Fla. 5th DCA 1983); see also, Trawick, Fla.Prac. & Proc., § 11.6 (1988 ed.). Here, Francolino filed only a general denial to Troiano’s affirmative defenses.
Francolino responds that the statute was tolled by Troiano’s fraudulent concealment of her cause of action until she discovered the error sometime in 1984. See Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976). The fraudulent concealment relied upon to extend the limitations period is based upon the fiduciary relationship between the son-in-law, Troiano, and the mother, Francolino, at the time the property was purchased. That relationship required the fiduciary (Troiano) to deal in the utmost good faith, and with a superlative degree of candor. Soud v. Hike, 56 So.2d 462 (Fla.1952); Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); Prescott v. Kreher, 123 So.2d 721 (Fla. 2d DCA 1960), cert. denied, 131 So.2d 206 (Fla.1961). The instant facts are strikingly similar to those in Soud, where a son chose the lawyer and instructed him to draft a deed inconsistent with his mother’s intent. The Florida Supreme Court, noting the fiduciary duty owed by the son to the mother, held that the instruments were void as a consequence of the defendant’s fraud and overreaching. They stated that misapprehension of the law by one party of which the other is aware at the time of entering the transaction, but which the latter does not rectify, may afford grounds for relief including reformation. See Soud at 468-469; accord, Williams v. Grogan, 100 So.2d 407 (Fla.1958). Consistent with the equitable principles found in Soud we hold that Troiano was under an affirmative obligation to inform Francolino of the contents of the deed, and having failed to do so the limitations period was tolled (notwithstanding any claim of constructive notice) at least until 1984 when Francolino actually learned that the deed did not reflect the understanding of the parties. Accordingly, Francolino’s reformation claim based upon fraud is timely under section 95.11(3)(j), Florida Statutes (1979).
*1057 Troiano’s argument that fraudulent concealment is an avoidance which must be pled in a reply to an answer is a correct statement of the law, but it does not apply in the instant case because the evidence of the fraudulent concealment of the title change by Troiano was admitted at trial without timely objection. Pleadings are deemed amended to conform to the proof. See Fla.R.Civ.P. 1.190(b); see also, Garrett v. Oak Hall Club, 118 So.2d 633 (Fla.1960).
Regarding the equitable lien, Francolino argues that no limitation period began running “until the sums were paid and demand for their repayment rejected.” But this argument assumes the existence of the underlying debt. We have difficulty with the trial court’s assessment of an equitable lien of $40,553.45 in favor of Francolino against the one-half interest of the Troianos in the Lake County Property because Francoli-no’s testimony simply does not support the existence of an underlying debt. Nor is there any evidence to suggest that prior to 1986 the parties intended for Francolino to be repaid at any time, or that the parties ever intended to charge the Lake County property with such a debt. See Meyer v. Schwartz, 391 So.2d 310 (Fla. 4th DCA 1980).
Francolino’s testimony clearly indicates that, prior to consulting an attorney in 1986, she never expected nor asked the Troianos to reimburse her for these monies. She testified that she made the mortgage payments voluntarily “because I didn’t want the property to be repossessed,” and she “came to the rescue” of the Troianos because they lacked money. There is no testimony that either of the Troianos ever requested Francolino to make these payments. Francolino’s testimony reveals that the monies were expended as a gift to the Troianos. It was only after they encountered marital difficulties in 1986 that Francolino consulted an attorney and, for the first time, demanded repayment via a letter written by the attorney.
It has been held that an action for an equitable lien is predicated upon a theory of equitable estoppel and requires allegations of “fraud, misrepresentation, or other affirmative deception.” Rinker Materials Corp. v. Palmer First National Bank & Trust Co. of Sarasota, 361 So.2d 156 (Fla. 1978); Armetta v. Clevetrust Realty Investors, 384 So.2d 55 (Fla. 4th DCA 1980). In the instant case, in regard to the equitable lien claim, Francolino has neither pled nor proven that the monies she paid in “coming to the rescue” were expended as the result of any fraud, misrepresentation or other affirmative deception by anyone, much less the Troianos.
We find no merit in the third and fourth issues raised on appeal by Troiano.
Accordingly, we affirm the deed reformation granted by the trial court and reverse its adjudication of the existence of an equitable lien against the Lake County property.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
GOSHORN, J., and SCHEB, J.M., Associate Judge, concur.