HARRIS, Judge.
In July, 1979 Henry Communications recovered a judgment against L. H. Hough in the amount of $45,000. While this judgment is not the subject of this appeal, it spawned the “tangled web” of deception that has enmeshed all the participants in this action and others in various lawsuits and appeals. It was the consequence of that judgment that inspired L. H. Hough and his wife, now Louise T. Bailey, to file for a sham divorce in Baker County (six days after the judgment and obtaining a final judgment on August 16, 1979) and then (on August 17, 1979) to convey all of Hough’s property otherwise subject to execution to Bailey.
The parties had agreed that the property would be held for Hough until he was able to “work out” the Henry judgment. But deception ran in the family. The sham divorce, sweetened by the rewards of conspiracy, transcended into a genuine dissolution when Bailey coveted the property as her own.
Unfortunately for our conspirators, Henry learned of their deception and commenced a fraudulent conveyance action against them. Hough, now fearing Bailey more than Henry, induced Bailey to agree to “place a lien” on the subject property to secure a loan from Hough’s brother for sufficient funds to pay or bond off the Henry judgment and thus avoid the fraudulent conveyance action. Bailey performed her agreement by delivering to attorney Loftin, in escrow, a deed to the property.
Neither the agreement to lien the property nor the Loftin escrow letter indicate any intention to convey the property to Fred Hough (the brother) other than as security for the loan to supercede or pay the Henry judgment. The loan was made and although Hough subsequently repaid his brother and obtained a quitclaim deed to *181 the property, this does not appear to strengthen his position. This is because the Bailey deed was withdrawn from escrow before delivery to Hough and because, even if the deed had been delivered, the deed was security only and became ineffective upon the repayment of the debt.
Having learned the art of deception from Hough, Bailey now improved upon it by conveying the property to her wholly owned corporation, T.B.F. Properties, Inc. on October 16, 1980. Hough, totally ineffective at fraud, called upon the courts to do justice and to require Bailey (and her corporation) to honor her lawful and honorable commitment and to reconvey his property to him. This action was filed in Duval County but a lis pendens was properly recorded in St. Johns County covering the property involved herein on July 7, 1981.
Bailey, not yet ready to trust her fate (and fortune) to the judicial process, through her corporation and in spite of (or because of) the lis pendens conveyed the property to Les Miles on December 24, 1981. As part consideration, Miles gave a mortgage to T.B.F. and a mortgage to Gregory Johnson, Bailey’s lawyer. On October 1, 1982 Miles conveyed a one-half interest in the property subject to the mortgages to Ronald Guy McIntosh for $25,000. Neither Miles nor McIntosh had actual knowledge of the pending litigation. Miles subsequently learned of the Duval County litigation and petitioned, as owner of part of the involved property, to intervene. His petition was denied.
During the course of the Duval County litigation, the continuing validity of the lis pendens was challenged. This challenge is more fully described in Hough v. Bailey, 421 So.2d 708 (Fla. 1st DCA 1982), rev. denied, 441 So.2d 614 (Fla.1983) and Hough v. Stewart, 543 So.2d 1279 (Fla. 5th DCA 1989). In Stewart this court held the lis pendens was effective through February 2, 1984. We find that American Legion Com. Club v. Diamond, 561 So.2d 268 (Fla.1990) does not affect this result.
On January 19, 1984 Hough recovered judgment against Bailey in Duval County requiring reconveyance of the property. On February 24, 1984 Johnson assigned his mortgage to Finance America Industrial Plan, Inc.[1] On March 1, 1984, still without actual knowledge of the litigation or the result of the litigation and after the expiration of the lis pendens, McIntosh purchased the remaining half of the property from Miles for an additional $20,000. McIntosh then paid off a mortgage to T.B.F. in the amount of $18,000; $9,000 made payable to Bailey; $9,000 to Johnson.
On August 14, 1985 Hough filed this action to quiet title against McIntosh, Johnson and Financial America. Bailey, T.B.F., and Miles were also joined in third party actions.
The trial court found that since the lis pendens was effective through February 2, 1984 — after the conveyance to Miles — that unless Hough was barred by the doctrine of unclean hands he must prevail. The court then determined that Watkins v. Watkins, 123 Fla. 267, 166 So. 577 (1936) and Miller v. Berry, 78 Fla. 98, 82 So. 764 (1919) precludes the application of the unclean hands doctrine under the facts of this case because appellants had no interest in the property at the time of the initial fraud. Summary judgment for Hough was entered.
1984 CONVEYANCE TO McINTOSH
The trial court did not explain why it failed to distinguish between the conveyance to McIntosh during the pendency of the lis pendens and the subsequent conveyance. The record reflects that McIntosh had no actual knowledge of the Hough *182 claim. The imputed knowledge given by the lis pendens automatically expired on February 2, 1984 and was ineffective for any purpose when McIntosh took title to the one-half interest on March 1, 1984. The summary judgment is reversed as it affects this interest in the property.
UNCLEAN HANDS DOCTRINE
We find that the unclean hands doctrine should apply under the facts of this case. The cases relied on by the trial court are inapplicable for the proposition stated.
Miller v. Berry, supra, involved the claims of judgment creditors of the fraudulent grantee existing prior to the conveyance. The court denied protection under the unclean hands doctrine because “[c]re-dit was not extended, nor any judgment recovered upon the faith of the record title in Miller.”[2] This case has no application. Watkins v. Watkins, supra, dealt with a situation in which parents concerned about a potential judgment, through a strawman, conveyed property to their child. The conveyance to the child was completed but the unrecorded deed was lost. Some years later persons claiming through the strawman claimed the property. Watkins was an action to establish the existing title not one seeking a reconveyance. The court stated:
This is a suit to establish a title already vested in the complainant as distinguished from one in which a reconveyance is sought. In Kahn v. Wilkins [36 Fla. 428, 18 So. 584 (1895)], [citation omitted] this court held that a conveyance between a fraudulent grantor and grantee is good as between the parties and vest title in the grantee, except as to those persons actually defrauded. In the case before us no creditor is involved and none complain.
Watkins, 166 So. at 578.
Watkins does not hold that one claiming through the fraudulent grantee is not entitled to rely on the unclean hands doctrine in an action filed by the fraudulent grantor seeking a reconveyance merely because he took title after the fraud. Regardless of when one purchases from the fraudulent grantee, and even if there was no original intent to injure such subsequent purchaser, he has been injured because of his “faith [in] the record title” (Miller) and he has been “actually defrauded” (Watkins) because of the ongoing effect of the initial fraud.
Had this been an action filed by Hough to obtain the return of his property from McIntosh, McIntosh would prevail.
EFFECT OF THE LIS PENDENS
It is the lis pendens, and the legal effect of it, that causes this most unjust result. The recording of the lis pendens, by operation of law, was notice to the world of Hough’s claim against Bailey. Blumin v. Ellis, 186 So.2d 286 (Fla. 2nd DCA 1966), cert. denied, 189 So.2d 634 (Fla.1966). Further, McIntosh was bound by the judgment ultimately reached in the Hough/Bailey action. Greenwald v. Graham, 100 Fla. 818, 130 So. 608 (1930) And he had no right to intervene. Intermediary Finance Corp. v. McKay, 93 Fla. 101, 111 So. 531 (Fla.1927). The supreme court held in McKay:
A lis pendens is literally a pending suit. It has been defined as the jurisdiction, power, or control which courts acquire over property involved in a suit, pending the continuance of the action, and until its final judgment therein. The general rule is that whoever purchases the subject matter of a suit pendente lite takes subject to the decree or judgment. The doctrine of lis pendens is grounded on the theory that the parties to the suit will not be permitted to withdraw or alienate the subject-matter thereof pending litigation. The adoption of any other view would overthrow the whole doctrine. [Citations omitted].
McKay, 111 So. at 532.
Normally lis pendens is a fair and reasonable doctrine that works no injustice. But in this case its application and the inability to intervene in the pending action has prevented a subsequent purchaser from properly litigating a valid, dispositive *183 defense against the fraudulent grantor. It is not enough to say that McIntosh (and his predecessor, Miles) should not have purchased the property. Had they known of the lis pendens at the critical time, they would not have done so.
When Miles discovered the litigation he attempted to intervene to raise the clean hands defense. He has made a compelling argument in this case as a third party defendant in support of the applicability of such defense under the facts of this case. He was denied that opportunity in the Du-val County case. Yet he and this court are bound by the result of that action. Only the final judgment in that case appears in this record. Neither Miles nor McIntosh nor this court know what defenses were presented by Bailey or how vigorously they were pursued. Although McIntosh purchased by mistake the property involved in this action, he should at least stand in the shoes of Bailey and in some manner be permitted to raise his defense against Hough.
While we find we must affirm the trial court in quieting, title to the original conveyance to McIntosh, we nevertheless certify the following question:
WHEN A PURCHASER FOR VALUE AFTER LIS PENDENS BUT WITHOUT ACTUAL NOTICE PURCHASES PROPERTY FROM THE FRAUDULENT GRANTEE AND THEN IS DENIED THE OPPORTUNITY TO INTERVENE IN THE PENDING ACTION, MAY HE RAISE EQUITABLE ESTOPPEL BY VIRTUE OF THE UNCLEAN HANDS DOCTRINE IN A SUBSEQUENT ACTION BROUGHT BY THE FRAUDULENT GRANTOR?
AFFIRMED in part; REVERSED in part; QUESTION CERTIFIED.
W. SHARP and PETERSON, JJ., concur.

. Attorney Johnson’s role in this matter is quite troubling. He represented Henry in obtaining the original judgment; he represented Bailey in her efforts to retain the property from Hough; he formed T.B.F. on behalf of Bailey; he represented Bailey while she conveyed the property into T.B.F.; he represented Bailey in the Duval County litigation; he represented T.B.F. (he prepared the deed) in the conveyance to Miles after the lis pendens; he took back individually a mortgage from Miles and after the judgment requiring a return of the property to Hough, assigned the mortgage to Finance America. He also accepted a $9,000 payment from McIntosh after the Duval County judgment.

. Miller, 82 So. at 764.