601 So.2d 1170 (1992)
Ronald Guy McINTOSH, Petitioner,
v.
L.H. HOUGH, et al., Respondents.
LES MILES ENTERPRISES, INC., Petitioner,
v.
L.H. HOUGH, et al., Respondents.
Gregory W. JOHNSON, et al., Petitioners,
v.
L.H. HOUGH, et al., Respondents.
Nos. 78152, 78169 and 78206.
Supreme Court of Florida.
May 28, 1992.
Rehearing Denied August 13, 1992.
W. Gregg McCaulie, Mahon, Farley & McCaulie, P.A., Jacksonville, Tyrie A. Boyer, Boyer, Tanzler & Boyer, P.A., Jacksonville, and Lavinia K. Kierking, Rumberger, Kirk, Caldwell, Cabniss, Burke & Wechsler, P.A., Orlando, for petitioners.
Carl D. Dawson, Dawson, Galant, Sulik, Wiesenfeld & Bickner, Jacksonville, for respondents.
GRIMES, Justice.
Pursuant to our jurisdiction under article V, section 3(b)(4) of the Florida Constitution, we review McIntosh v. Hough, 579 So.2d 179 (Fla. 5th DCA 1991), in which the district court certified the following to be a question of great public importance:
WHEN A PURCHASER FOR VALUE AFTER LIS PENDENS BUT WITHOUT ACTUAL NOTICE PURCHASES PROPERTY FROM THE FRAUDULENT GRANTEE AND THEN IS DENIED THE OPPORTUNITY TO INTERVENE IN THE PENDING ACTION, MAY HE RAISE EQUITABLE ESTOPPEL BY VIRTUE OF THE UNCLEAN HANDS DOCTRINE IN A SUBSEQUENT ACTION *1171 BROUGHT BY THE FRAUDULENT GRANTOR?
Id. at 183.
In July of 1979, a judgment was entered against L.H. Hough. In order to avoid paying this judgment, Hough and his wife, Bailey, filed for divorce and conveyed all of Hough's property otherwise subject to execution to Bailey. The couple agreed that the property would be held for Hough until he was able to work out the judgment against him.
The judgment holder, Hendry County Communications, learned of Hough's scheme and commenced a fraudulent conveyance action against the couple. In order to avoid this action, Bailey and Hough agreed that the Hendry judgment would be paid through a loan from Hough's brother. According to Hough, the agreement provided that Bailey would then reconvey the property to him. Bailey delivered a deed to the property in escrow to serve as security for the brother's loan.
Instead of returning the property to Hough, Bailey conveyed the property to her wholly owned corporation, T.B.F. Properties. Hough filed an action in Duval County seeking the return of his property from Bailey. On July 7, 1981, a lis pendens covering the property involved here was properly recorded.
On December 24, 1981, Bailey, through her corporation, conveyed the property to Les Miles.[1] On October 1, 1982, Miles conveyed a one-half interest in the property subject to the mortgages to McIntosh. Neither Miles nor McIntosh had actual knowledge of the pending litigation between Hough and Bailey in Duval County. Miles subsequently learned of this litigation and petitioned to intervene. Upon the objection of Hough, this petition was denied.
During the course of the Duval County litigation, the continuing validity of the lis pendens was challenged. In Hough v. Stewart, 543 So.2d 1279 (Fla. 5th DCA 1989), the court held that the lis pendens was effective through February 2, 1984. On January 19, 1984, Hough recovered a judgment against Bailey in Duval County requiring reconveyance of the property.
On March 1, 1984, still without actual knowledge of the Duval County litigation or its result, and after the expiration of the lis pendens, McIntosh purchased the remaining half of the property from Miles.
On August 14, 1985, Hough filed this action to quiet title against McIntosh, Johnson, and Financial America, to whom Johnson had assigned his mortgage. Bailey, T.B.F., and Miles were joined in third-party actions.
The trial court entered summary judgment for Hough. The court found that since the lis pendens was effective through February 2, 1984  after the conveyance to Miles  unless Hough was barred by the doctrine of unclean hands he must prevail. The court then determined that the unclean hands doctrine could not apply under the facts of this case because the parties asserting the doctrine had no interest in the property at the time of the initial fraud.
The district court reversed the summary judgment as to the one-half interest conveyed to McIntosh on March 1, 1984. The court held that the imputed knowledge given by the lis pendens automatically expired on February 2, 1984, and the lis pendens was therefore ineffective for any purpose when McIntosh took title to this interest in March.[2] As to the original conveyance to McIntosh, the district court affirmed the summary judgment in favor of Hough.[3]
*1172 The sole issue we will address in this case is the application of the unclean hands doctrine. Hough argues that the defendants are precluded from raising unclean hands because they were not actual targets of the fraud  only Hendry Communications was, and it is not a party. In making this argument Hough relies on two cases, Miller v. Berry, 78 Fla. 98, 82 So. 764 (1919), and Watkins v. Watkins, 123 Fla. 267, 166 So. 577 (1936).
In Miller, land was fraudulently conveyed to Miller in an attempt to prevent the property from falling into the hands of the grantor's wife. Miller's creditors attempted to seize the property, arguing that estoppel prevented the grantor from establishing that the property was really his. The Court rejected that argument and refused to apply estoppel.[4] The creditors had received judgments against Miller before the fraudulent conveyance. "[T]he position of the judgment creditors has been in no way affected by the transaction in question... . No substantial right was acquired on the faith of or by reason of the record showing an interest in [Miller]." Miller, 78 Fla. at 100, 82 So. at 764-65. Unlike the defendants here, the claimants in Miller took no action after the fraudulent conduct in reliance on the results of that conduct. Here, substantial rights and liabilities were acquired on the faith of Bailey's title. We therefore find Miller to be distinguishable from the present situation.
In Watkins, parents attempted to avoid creditors by conveying property, through a strawman, to their child. The deed from the strawman to the child was lost, and the strawman's heir later deeded the property to Ocala Manufacturing Ice & Packing Company. In the suit at issue, the child sought to reestablish the lost deed.
The Court noted that none of the creditors who were direct targets of the fraudulent conveyances were complaining in the case at bar. The Court then stated that unclean hands does not apply in all cases in which fraud is involved, "but is confined to misconduct in the matter in litigation, and must concern the opposite party." Watkins, 123 Fla. at 271, 166 So. at 578. While Ocala Manufacturing was an innocent party, it could not complain about the fraudulent nature of the transactions at issue "[a]s between the parties here involved." Id. It could not complain about the conduct as to the strawman, because she (actually, her heir) was not an "opposite party." Ocala could not complain of the fraud as to the child's mother and father, because they were not parties to the suit, and the initial transaction's fraudulent nature was in fact irrelevant to the case at bar. Finally, then, Ocala was left solely with an attempt to estop the child himself from benefitting from the fraudulent transfer by acquiring title to the land. As the Court explained, estoppel could not be asserted against the child because as a matter of law he was too young to satisfy estoppel requirements.
Thus, Watkins held that estoppel could not be raised not because no party was a target of the fraud, but because the only party who could possibly be estopped was a child, and his status as such prevented the defense from being raised. Given that there is surely no allegation in the present case that Hough was a child when he transferred the property to Bailey, we find Watkins to be inapplicable here.
In addressing the application of the unclean hands doctrine under the unique facts of this case, we begin with the general principle that a court of equity is not, nor should it be, "an avenger of wrongs committed at large by those who resort to it for relief." Miller, 78 Fla. at 101, 82 So. at 765. The fact that a party's conduct is disreputable would be entirely irrelevant in those cases where the party asserting unclean *1173 hands has taken no action in reliance on that conduct, however disdainful of that conduct a court may be. However, we decline to apply this principle in such a broad manner as to prevent the defendants in this case from asserting Hough's unclean hands.
Although the deed from Hough to Bailey was not originally intended to defraud any of the parties to this suit, the fact remains that these parties were affirmatively damaged by that fraud. These parties took affirmative action by purchasing the property with faith in the title of the fraudulent grantee. The fraud was perpetrated to put the deed in Bailey's name; it was this fraud which ultimately convinced the defendants to purchase the property from Bailey. In short, it was Hough's fraud which put in motion the events which culminated in Miles' acquisition of the property. Under the unique facts of this case, where the fraudulent grantor seeks to quiet title against innocent purchasers who affirmatively relied on the results of the fraud, the innocent purchasers may raise an unclean hands defense.
Hough is in no position to contend that this defense should have been raised in the Duval County action when it was he who objected to Miles' petition to intervene. Further, we reject Hough's argument that the transactions with his brother somehow cleansed his hands. Hough has no claim to the land through his brother. The Bailey deed was withdrawn from escrow before it was delivered to the brother. In any event, the brother's loan was subsequently repaid and any interest he may have had in the property was satisfied.
The certified question is answered in the affirmative. Accordingly, the opinion of the district court is approved in part and quashed in part, and the case remanded for further proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and BARKETT, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, dissenting.
As stated in the majority opinion, the interest of Miles and McIntosh in the property emanated from the deeding of the property by Bailey contrary to her agreement with Hough. Litigation was pending between Hough and Bailey concerning the property when she deeded it, and a valid lis pendens had been filed. As properly noted by the district court, a purchaser of property in litigation takes subject to the result of the suit where a lis pendens has been filed and is in force. Greenwald v. Graham, 100 Fla. 818, 130 So. 608 (1930). It matters not that Miles was denied an opportunity to intervene in that litigation. We have stated: "This court is committed to the doctrine that a purchaser pendente lite is not entitled to intervene." Intermediary Finance Corp. v. McKay, 93 Fla. 101, 103, 111 So. 531, 531 (1927). In McKay we also noted that the doctrine of lis pendens is grounded in the theory that the parties to the suit will not be permitted to withdraw or alienate the subject matter thereof pending litigation.
If Hough committed any fraud, it was against a creditor whose claim is now satisfied. Neither Miles nor McIntosh obtained title from this entity; their title emanated from Bailey who committed the wrong and lost her claim of interest in the litigation with Hough. Because she lost, so should her grantees insofar as any interest they obtained while the lis pendens was valid. They cannot relitigate the case between Hough and Bailey.
McIntosh obtained a one-half interest for value and apparently without notice from Miles after the lis pendens expired. To that extent he should prevail unless it is shown he had actual knowledge of Hough's claim to the property. On the first one-half interest he should lose. I agree with the result reached by the district court.
OVERTON, J., concurs.
NOTES
[1] As part consideration, Miles gave a mortgage to T.B.F. and a mortgage to Johnson, Bailey's attorney.
[2] We agree with this analysis and approve this portion of the district court's opinion. We reject Hough's argument that this issue was not properly before the district court. Hough does not contend that the issue was incorrectly decided on the merits.
[3] The district court affirmed the judgment despite holding that the unclean hands defense should be applied under the facts of this case. Apparently, the district court found that the existence of the lis pendens required summary judgment in Hough's favor, regardless of the possibility of an unclean hands defense. Although it is true that parties who buy property on which a lis pendens has been filed take subject to the result of the suit, equitable defenses may defeat the effect of a lis pendens. See Doyle v. Tutan, 110 So.2d 42, 46 (Fla. 3d DCA 1959). Therefore, assuming the lis pendens here to be valid through February 2, as the court held in Hough v. Stewart, 543 So.2d 1279 (Fla. 5th DCA 1989), the application of estoppel through the unclean hands doctrine could nevertheless permit the defendants to prevail.
[4] Although not raised by the parties, the Court also noted that an unclean hands defense would be inapplicable as well.